**Walter B. VANDERGRIFT, Administrator of the Estate of Walter James Vandergrift, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 77–197–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Nov. 28, 1979.

George H. Gray, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., for plaintiff.

Stephen Wainger, John F. Kane, Asst. U. S. Attys., Norfolk, Va., Dennis deLeon, Trial Atty., Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

OPINION

KELLAM, District Judge.

By opinion filed herein March 30, 1978, 500 F.Supp. 229 (E.D.Va.) this Court found the United States guilty of negligence which caused the death of plaintiff's decedent and awarded plaintiff a judgment for $183,511.40.

The United States operates and maintains a large facility at Langley Air Force Center in Virginia, including National Aeronautics and Space Administration Research Center (NASA). It contracted with Mechanical Products, Inc. (Mechanical) for the performance of certain construction and installation work at Langley. Mechanical subcontracted a portion of the work to Sullivan Mechanical Contractors, Inc. (Sullivan). Plaintiff's decedent, Walter James Vandergrift, was an employee of Sullivan, and at the time of his fall and death was working on the roof of a building of NASA in the performance of his duties.

This action was filed pursuant to the Federal Tort Claims Act (FTCA) which holds the United States liable to damages for negligence under the same circumstances that "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Under the provisions of the Virginia Workmen's Compensation Act (Act) the employer of an injured person in industry is liable for payment of compensation to an injured person covered by the terms of the Act, and in return is granted immunity from further tort action by the employee. Virginia Code §§ 65.1–36 and 65.1–40. But the Act "does not deny an injured employee the right to pursue his action at law against a negligent third party. *Veale v. Norfolk and Western Railway Company*, 205 Va. 822, 139 S.E.2d 797, 799 (1965); *Fauver v. Bell*, 192 Va. 518, 526, 65 S.E.2d 575, 580. Under the Act, the exclusivity of recovery is only as to an employee and his employer, and only his right to sue his employer for damages is barred by the acceptance of compensation under the Act.

On appeal to the Fourth Circuit, that Court remanded the case "for determination of whether a private owner, engaged in repairs such as NASA was, would qualify for the tort immunity provided by the Virginia Act. *See* Va.Code § 65.1–29; Va.Code § 65.1–40." Slip Opinion May 10, 1979, No. 78–1407.

I

Jurisdiction of this Court is grounded in 28 U.S.C. § 1346(b) for claims against the United States for money damages for personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States acting within the scope of his office or employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Hence, we must follow the law of Virginia, and the interpretation placed on the statutes of Virginia by the highest court of that State. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *C.I.R. v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire & Marine Ins. Co. v. Lack*, 476 F.2d 583 (4th Cir. 1973); *Snowden v. Virginia Electric & Power Co.*, 432 F.Supp. 266, 268 (D.C.Va.1976).

II

The question at issue is whether under the Virginia Workmen's Compensation Act immunity "would apply to a private employer like NASA," and if so, "then the judgment against the United States should be set aside; for if the Virginia Act would have applied, the FTCA provided Vandergrift no claim against the United States." Slip Opinion of May 10, 1979, No. 78–1407.

Following remand plaintiff submitted interrogatories to the United States to which it responded. The following facts are established by the answers to interrogatories and the evidence in the case.

1. Langley Research Center was established in 1917 as a part of the National Advisory Committee for Aeronautics. Subsequently, all functions and powers were transferred to NASA. 42 U.S.C. § 2451 et seq.

2. By the terms of the Act it is authorized to acquire, construct, improve, repair, maintain laboratories and facilities, and in carrying out its functions to enter into and perform contracts, leases, agreements or other transactions as may be necessary in the conduct of its works and on such terms as it may deem appropriate, with any person, firm or association. See 42 U.S.C. § 2473.

3. It employs some 3200 persons. Its facilities represent a plant investment of about 500 million dollars with a replacement value of about one billion dollars.

4. It is normal and usual for NASA to contract with independent contractors to do work at Langley of the size and scope of the work which Sullivan was doing, rather than for NASA to undertake to do the work with its own employees.

5. There was no dollar figure which NASA used in determining whether the work would be done by independent contract or by NASA doing it with its employees.

6. Prior to the time of Vandergrift's fall, NASA had never performed with its own employees the same or similar type work as was being done by Sullivan.

7. It maintained no construction division or work crew to do the work of the type which was being done by Sullivan.

8. United States contracted with Mechanical Products, Inc. for the performance of substantial construction and installation work at Langley. Mechanical subcontracted a portion of the work to Sullivan, including installation of ducts for the air vent system in Building 643. Vandergrift was an employee of Sullivan.

9. Reference is also made to the facts found in the original opinion filed herein.

### III

This case, like the case of *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), turns on a mixed question of law and fact. That is, was Vandergrift a statutory employee of the United States? Inasmuch as the *Bassett case* is of primary importance and the controlling authority, the facts are set forth in some detail.

Bassett is a large furniture manufacturer with plants in eight states, and employs about 7000 workers. It decided to enlarge one of its plants by adding a 3½ million dollar warehouse. It put the project out to bids. Among the work was the installation of a conveyor belt system in the new building to connect with an existing building. Bassett did the electrical work and periodically inspected the construction. It was necessary to cut a hole in the floor of the existing building in order for the conveyor to pass through. Bassett's carpenters cut this hole. This was the hole through which the plaintiff fell and was injured. Bassett had no separate construction division and employed only a dozen or so carpenters on the maintenance crew and about 60 electricians. Its employees were sometimes called upon to perform certain tasks in connection with new construction. During the few years prior to the injury Bassett contracted with independent contractors for most of its building work, and used its people to make modifications. It did not maintain a separate crew for purposes of conveyor systems.

The Court, after quoting the language from Virginia Code §§ 65.1–29, 65.1–30 and 65.1–31, said:

> These three statutes must be "read and reconciled with" the language in what is now Code § 65.1–5 (Repl.Vol.1973). *Sykes v. Stone & Webster Eng. Corp.*, 186 Va. 116, 121, 41 S.E.2d 469, 471 (1947). That language provides that "[n]othing in this act ... shall be construed to make .. the employees of an independent contractor the employees of the person ... contracting with such independent contractor."

When so read and reconciled:

> "It clearly appears to be the purpose ... to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe[e] engaged in that work every such owner, or contractor, and subcontractor, above such employe[e]. But when the employe[e] reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe[e] is not a part, then that employer is not liable to that employe[e] for compensation .... At that point [Code § 65.1–5] intervenes and the employe[e]'s right of action at common law is preserved." 186 Va. at 122–23, 41 S.E.2d at 472; quoted with approval in *Anderson v. Thorington Construction Co.*, 201 Va. 266, 271, 110 S.E.2d 396, 399–400 (1959).

The Fourth Circuit in dealing with the provisions of the Virginia Act in *Sears, Roebuck & Co. v. Wallace*, 172 F.2d 802, 810 (4th Cir. 1949), quoted with approval from *Sykes v. Stone & Webster Engineering Corp.*, 186 Va. 116, 121, 41 S.E.2d 469, 471 (1947), the following:

> "The statute was not intended to relieve employers from liability for their own negligence which causes injury to the employees of independent contractors engaged in the performance of work for employers outside the scope of the latter's occupation."

An owner simply by contracting with independent contractors "does not thereby become a statutory employer unless the work performed by the independent contractor 'is a part of [owner's] trade, business or occupation.'" *Bassett Furniture Industries, Inc. v. McReynolds, supra* [224 S.E.2d 326]. Continuing in the *Bassett case, supra*, the Court said that the test of whether the work is a part of the owner's "trade, business or occupation," is "the one quoted and applied ... in *Shell Oil Co. v.*

*Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972)." It then quoted the following from the *Shell Oil case* :

" '[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.' (Emphasis supplied.)" (Citation omitted).

And continuing 224 S.E.2d at page 326, the Court said:

Frequency and regularity of performance are factors to be considered in determining whether work is "normally carried on through employees". *See generally*, 1A A. Larson, *The Law of Workmen's Compensation* § 49.12 (1973). Mere capacity to perform, standing alone, is not determinative. *Holt v. Bowie*, 343 F.Supp. 962, 965 (W.D.Va.1972). *See also Gaston v. Cooperative Farm Chemicals Association*, 450 S.W.2d 174, 180–81 (Mo. 1970). Nor is performance which is a *de minimis* part of the total business operation. *Sun Oil Company v. Lawrence*, 213 Va. 596, 194 S.E.2d 687 (1973).

In the manufacturing industry, construction work is typically outside the custom of the trade, and manufacturers who use their employees for such work generally do so only infrequently and irregularly. The courts have largely agreed that such manufacturers are not statutory employers of employees of independent contractors hired for such work. *See e. g., Ray v. Monsanto Company*, 420 F.2d 915 (9th Cir. 1970) (construction of new furnace); *King v. Palmer*, 129 Conn. 636, 30 A.2d 549 (1943) (installation of a new heating system); *Hataway v. Proctor & Gamble Manufacturing Co.*, 195 Kan. 335, 405 P.2d 350 (1965) (construction of plant addition); *Duplechin v. Pittsburg Plate Glass Company*, 265 So.2d 787 (La.App.1972) (construction of new electrical generating facilities). On the other hand, where a manufacturer regularly does its own construction work with its own employees, a different result may be reached. In *Walker v. United States Gypsum Company*, 270 F.2d 857 (4th Cir. 1959), *cert. denied*, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960), a manufacturer maintained a full–time construction division and, using its own employees, performed all of the construction work on plant additions, modifications, and modernizations and part of the work on new plant construction; there, the court held that the manufacturer was the statutory employer of an employee of a plumbing subcontractor working on construction of a new plant.

The policy and purpose of the National Space Program, of which NASA is a part, is defined in 42 U.S.C. § 2451 as the expansion of human knowledge of phenomena in the atmosphere and space; the improvement of the usefulness, performance, speed and efficiency of aeronautical and space vehicles; the development and operation of vehicles capable of carrying instruments, equipment, supplies and living organism through space; studies of the potential benefits and problems in utilization of space activities; preservation of the role of the United States as a leader in aeronautical and space science; discovery of military value of space activities; and the most efficient use of science resources.

What the Court said in *Bassett, supra,* is clearly applicable here. That is, that Bassett was a manufacturer of furniture. It maintained no separate construction division. Only a negligible fraction of its employees was trained in construction skills. Carpenters and similar craftsmen were assigned to maintenance crews, and they were only used, when available, to construct all or part of minor projects. It contracted most of its construction work outside. While it had the capacity to build conveyors, it never undertook anything of the magnitude of constructing a conveyor like the one in issue. The Court there held that

"the evidence was sufficient to support the . . . finding that the work in which plaintiff was engaged at the time of his injury was not 'a part of' the business normally carried on by Bassett through its own employees." [224 S.E.2d 327]. What was said there is equally applicable here. NASA is engaged in aeronautical and space study and the benefits which may arise therefrom, not in construction or improvement of buildings. It maintains no separate construction division. In fact there is no evidence it ever undertakes any building construction, repair, improvement or remodeling, nor is there evidence it maintains any such work force, or that it ever does any such work, or that its employees are trained to do such work. It always contracted with others to have the work done. It was "normal" and "usual" for NASA to contract with independent contractors to do work of the size and scope of the work being done by Sullivan at the time of Vandergrift's fall. It had never performed with its own employees work similar to that being done by Sullivan. Clearly, the work being done by Sullivan was not a part of the "trade, business or occupation" of NASA, and in NASA's activities, it was not the type of work "normally" carried on through its employer, rather than by an independent contractor. In fact, all of its construction, repair and remodeling was always done through independent contractors.

It is of no consequence "whether the subcontractor's activity is useful, necessary or even absolutely indispensable to NASA's [the statutory employer's] business," but the "test is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors." [Emphasis from the opinion]. *Shell Oil Co. v. Leftwich*, supra [187 S.E.2d 167].[1] In *Leftwich, supra*, in holding that Shell as owner of a service station leased to a dealer who was selling and dispensing gas retail, was not performing work that is a part of the trade, business or occupation of Shell, said:

Our conclusion is that while the sale of gasoline was indispensable to Shell's business, such sale to the consumer public was an activity which Shell did not normally carry on through its employees–and that this determines its liability under Code § 65.129 [now 65.1–29].

The same holding appears in *Sun Oil Company v. Lawrence*, 213 Va. 596, 194 S.E.2d 687 (1973). The fact that NASA "could have performed the function if it had so desired" is not at all relevant "to the question under consideration, . . . nor does it make any difference that the [airducts, etc.] was a necessary element of [NASA's] obligation" under the Act of Congress, as NASA "might be in the [space business], but it is not in the building business." *Holt v. Bowie*, 343 F.Supp. 962 (D.C.Va.1972).

The Virginia Supreme Court has drawn a distinction between an owner or employer who contracts out work, which he himself generally does perform or which in the ordinary course of his particular trade, business or occupation persons similarly situated actually perform or could be expected to perform, and an owner or employer who contracts out work which he does not or never could be expected to perform. In the first case, the provisions of the Workmen's Compensation Act attach, and the owner comes within the coverage and immunity of that Act. *Snowden v. Virginia Electric & Power Co., Inc., supra*, and cases there cited. In the latter case the Act does not apply and there is no coverage or immunity under it. *Holt v. Bowie, supra*. In the last cited case the authorities supporting each contention are cited.

In the remand the Court of Appeals directed this Court's attention to the case of *Williams v. United States Fidelity & Guaranty Co.*, 358 F.2d 799 (4th Cir. 1966). There an injured employee, a recipient of compensation, sought to maintain an action against the employer's insurance carrier on the assertion that the injury suffered in the operation of her employer's equipment was

---

1. This is the same test applied in *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323, 326 (1976); *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971); *Burroughs v. Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969).

due to the insurance carrier's negligence in pursuing employee safety measures which it had assumed. In affirming the District Court's dismissal, the Court of Appeals held that under the Act the insurance company, defendant, was essentially the employer, and not a third party. The Act itself provided that if the employer was insured it includes his insurer as far as applicable. The Court held that the immunity provision of the Act applied to an insurance carrier as an employer when the employee's claim rests on a breach of a voluntary undertaking assumed by the insurer. It has no application to the facts of this case.

### IV

Sullivan was not doing work which the owner, NASA, generally does, or has ever done. It was not a part of NASA's trade, business or occupation to do this type work. Hence, it does not, under the facts of this case, qualify for tort immunity under the provisions of the Act. Vandergrift, at the time of his fall causing his death, was not engaged in work which was a part of the "trade, business or occupation" of NASA. The provisions of the Virginia Workmen's Compensation Act do not apply, and plaintiff is entitled to maintain this action under the FTCA, 28 U.S.C. § 1346(b).