Janice S. **PEARMAN**, Administratrix of the Estate of James Carlton Pearman, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

Civ. A. No. 80–0276–A.

United States District Court, W. D. Virginia, Abingdon Division.

Dec. 16, 1981.

Willis A. Woods, Bird & Slavin, Wythe-ville, Va., for plaintiff.

Thomas R. King, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Janice S. Pearman, Administratrix of the estate of James Carlton Pearman, brings this action under the Federal Tort Claims Act, 28 U.S.C. § 2674.[1] Jurisdiction attaches pursuant to 28 U.S.C. § 1346(b).[2] The defendant has filed a motion to dismiss this action due to lack of jurisdiction or in the alternative to grant the defendant summary judgment because there is no genuine issue as to any material fact. For the reasons stated below, this court denies the alternative motions.

The facts giving rise to this litigation are as follows: On January 6, 1978, an explosion occurred in the nitroglycerin processing area of the Radford Army Ammunition Plant in Radford, Virginia. The plant is government owned but operated by Hercules, Inc., an independent contractor. The facility is engaged in the production of various types of explosive materials. The deceased, James Carlton Pearman, was an employee of Hercules and was killed as the result of the explosion which occurred on January 6, 1978. The decedent's estate was awarded benefits of $145.33 per week for 500 weeks under the Virginia Workmen's

1. 28 U.S.C. § 2674 provides:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

2. 28 U.S.C. § 1346(b) provides:

Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Compensation Act. In January, 1980, the plaintiff filed a claim against the Department of the Army on behalf of the estate of James Carlton Pearman seeking recovery under the provisions of the Federal Tort Claims Act. The claim was denied by the Army in March of 1980, and under the provisions of 28 U.S.C. § 2675 this action followed.

The defendant argues that the liability and immunity provisions of the Virginia Workmen's Compensation Act, Va.Code § 65.1–1 *et seq.* [hereinafter the Act] apply to the defendant. It is undisputed that James Pearman was injured in the course and scope of his employment and that such work-related death was covered by the Virginia Workmen's Compensation Act. The Act provides persons injured in the course of employment with a streamlined administrative procedure by which to obtain redress from their employers. *See,* Va.Code §§ 65.1–92 through 65.1–99 (Repl. Vol. 1980).

The liability and immunity provisions of the Act also apply to a class of persons commonly known as "statutory employers." Included within this classification are owners of property who employ independent contractors to perform work which is part of the owners' trade, business or occupation. Va.Code § 65.1–29 (Repl.Vol.1980). "The purpose of this section [§ 65.1–29] is to bring within the operation of the Workmen's Compensation Act all persons engaged in any work that is a part of the trade, business, or occupation of the 'owner' which is *customarily* done by the owner's employees." *Southeastern Tidewater Area Manpower v. Coley,* Va., 275 S.E.2d 589, 591, 221 V.R.R. 871, 874 (1981) (emphasis added).

Under the provisions of the Act the employer or the "statutory employer" of an injured person is "liable for payment of compensation to an injured person covered by the terms of the Act, and in return is granted immunity from further tort action by the employee." *Vandergrift v. United States,* 500 F.Supp. 237 (E.D.Va.1979), aff'd, 634 F.2d 628 (4th Cir. 1980); Va.Code §§ 65.1–36 and 65.1–40 (Repl.Vol.1980). However, the Act "does not deny an injured employee the right to pursue his action at law against a negligent third party." *Veale v. Norfolk and Western Railway Co.,* 205 Va. 822, 825, 139 S.E.2d 797, 799 (1965); *Fauver v. Bell,* 192 Va. 518, 526, 65 S.E.2d 575, 580 (1951). Therefore, exclusivity of recovery is only between the employee and his employer, and "only his right to sue his employer for damages is barred by the acceptance of compensation under the Act." *Vandergrift,* 500 F.Supp. at 238.

The liability of the defendant is determined by whether the United States Government is the "statutory employer" of the plaintiff. That in turn is determined by whether Hercules, Inc. was engaged in work that is a part of the trade, business, or occupation of the Government which is "customarily" or "normally" done by employees of the government.

The defendant has filed a declaration by Captain Fred S. Underwood the Commanding Officer of the Naval Ordnance Station, Indian Head, Maryland, stating that nitroglycerin and related compounds are manufactured by civilian Government employees at the Ordnance Station. "Frequency and regularity of performance are factors to be considered in determining whether work is 'normally carried on through employees'." *Bassett Furniture v. McReynolds,* 216 Va. 897, 902, 224 S.E.2d 323, 336 (1976). Furthermore, performance which is a *de minimus* part of the total business operation is not a determinative factor. *Id.* at 903, 224 S.E.2d at 327. On the basis of one declaration, the court cannot determine whether nitroglycerin is normally manufactured by government employees or by contractors or that production of nitroglycerin is not a *de minimus* part of Government operations.

The Fifth Circuit has found the United States to be statutory employer in a case factually congruent to the one at bar, and involving a Louisiana Statute similar to Va. Code § 65.1–29. *See Roelofs v. United States,* 501 F.2d 87 (5th Cir. 1974), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d

47 (1975). However, the plaintiffs in *Roelofs* were careful to preserve the question of whether the Government met the criteria to qualify as a statutory employer and the Fifth Circuit *assumed* the Government met such criteria for the purpose of the appeal. *Roelofs*, 501 F.2d at 91 n. 9. The Fifth Circuit went on in footnote nine to say the assumption was probably a safe one on the basis of a footnote in *Powell v. United States Cartridge Co.*, 339 U.S. 497, 499 n. 2, 70 S.Ct. 755, 757 n.2, 94 L.Ed. 1017 (1949). *Id.* Footnote 2 is contrary to the Fifth Circuit's assumption because it indicates that the Government operates most of its munitions plants through commercial contractors.[3] *Powell*, 399 U.S. at 499 n. 2, 70 S.Ct. at 757 n.2.

At this stage of the proceedings, the court is unable to find as a matter of law that Hercules, Inc. was engaged in an activity which is "customarily" or "normally" done by employees of the defendant. Accordingly, the defendant's motion to dismiss or in the alternative for summary judgment is denied.

---

**3.** Footnote 2 reads in pertinent part:

Congress charged the War and Navy Departments with the operation of about 100 giant Government-owned munitions plants. Those Departments had the option of operating them themselves or through commercial contractors. So as to utilize fully the labor and management resources of the nation and to minimize encroachment upon its industrial structure, both Departments chose the latter course. . . .