**Evelyn COULTER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV.A. 02–1645–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 10, 2003.

private food services contractor for the Marine Corps, sues the United States for injuries she suffered in the course of performing her food preparation duties in the kitchen at the Quantico Marine Corps Base in Quantico, Virginia. The threshold, dispositive question presented is whether workers' compensation benefits pursuant to the Virginia Workers' Compensation Act ("VWCA")[2] are plaintiff's sole and exclusive remedy for her injuries, thereby barring her FTCA claim. Put differently, the question is whether the government is plaintiff's statutory employer under the VWCA where, as here, the Marine Corps is required by statute to provide meals for its enlisted members, and the plaintiff worked for a food services subcontractor engaged by the Marine Corps for that purpose.

Martin Ray Mann, Law Offices Martin R. Mann, Falls Church, Va, for Plaintiff.

Anita C. Snyder, United States Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Federal Tort Claims Act ("FTCA")[1] suit, plaintiff, an employee of a

## I.

■ The material, dispositive facts are either uncontested or incontestable.[3] They are as follows:

1. On December 7, 2000, plaintiff Evelyn Coulter, a Virginia resident, was injured while working as a cook at the Quantico Marine Corps Base ("Quantico") in Quantico, Virginia. Plaintiff was severely burned when scalding water was expelled from a food steamer as it was being opened by plaintiff.

---

1. 28 U.S.C. § 2671 et seq.

2. Va.Code § 65.2–100 et seq.

3. The proper vehicle for challenging subject matter jurisdiction in light of the VWCA's exclusivity provision is a motion to dismiss pursuant to Rule 12(b)(1), Fed.R.Civ.P. See Nelson v. U.S. Postal Service, 189 F.Supp.2d 450, 454 (W.D.Va.2002). When the factual basis for subject matter jurisdiction is challenged, the burden of proving subject matter jurisdiction is on the plaintiff. See Richmond, Fredericksburg & Potomac R.R. Co. v. United

States, 945 F.2d 765, 768 (4th Cir.1991). In resolving subject matter jurisdiction challenges, courts consider the allegations in the pleadings as "mere evidence on the issue," and "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The moving party shall prevail "only if the material facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. In other words, courts may dismiss the case where the "undisputed facts establish a lack of subject matter jurisdiction." Id.

2. At the time, plaintiff was working for American Service Contractors, a subcontractor of ServiceSource, which had a contract to supply cooking services for Quantico.

3. Plaintiff was paid lost wages and medical benefits by Kemper Insurance Companies pursuant to American Service Contractors' workers' compensation insurance contract with Kemper. Although plaintiff has received and retained such payments, it appears that plaintiff has not filed a claim with the Virginia Workers' Compensation Commission.

4. Except for a brief period in 1990, the Marine Corps has, since at least 1985, engaged various contractors to provide cooking services at Quantico. During that brief period in 1990, the Marine Corps itself hired civilian employees to perform cooking services while it searched for a new food services contractor.

5. Since 1985 plaintiff has performed cooking services at Quantico as an employee of the Marine Corps' food service contractors and subcontractors and, briefly, the Marine Corps itself.

6. The United States Department of the Navy is required by statute and regulations to provide meals to its enlisted members. *See* 10 U.S.C. § 6081(a) (providing that "[e]ach enlisted member of the naval service is entitled to a Navy ration for each day that he is on active duty, including each day he is on leave").[4] Department of Defense and Marine Corps regulations and orders govern the provision of meals and the operation of Marine Corps mess halls. *See* Marine Corps Order 10110.34E (1992) (Def. Reply Br. att. B). The government has chosen to meet its duty to provide its enlisted members with meals by contracting out the cooking services rather than hiring Marine Corps civilian employees to cook.

The above facts are either not disputed by the parties, or, in the case of the statutes and regulations, incontestable. In addition, the government has provided specific information about the Quantico food service operation in the form of affidavits from Major Kathy L. Velez, the Head of the Food Services Branch at Quantico. According to the affidavit attached to the government's supplemental brief, 1,038,898 meals were served at Quantico in the year 2001, of which 910,068 were provided as mandated by statute. The affidavit also states that the provision of rations is typically "subsistence in kind," *i.e.* actual meals provided in Marine Corps dining facilities, rather than monetary payment; this provision of meals is necessary to ensure that Marines have access to "adequate wholesome dining" while carrying out their statutory duties. In a further affidavit, attached to the government's reply to plaintiff's supplemental brief, Major Velez details the level of oversight, direction, control and inspection exercised by the Marine Corps Food Services Branch over the contractors hired to provide the cooking services.

On August 31, 2001, plaintiff filed a claim with the Claims Department, Naval Service Office, which was denied by letter dated July 22, 2002. Thereafter, on November 6, 2002, plaintiff filed this action,

---

4. The Marine Corps, as a separate service within the Department of Navy, is covered by this statute. *See* 50 U.S.C. § 401.

pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*, claiming the United States was negligent in maintaining or monitoring the food steamer equipment which caused plaintiff's injuries. On January 8, 2003, the government moved to dismiss plaintiff's action, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P., contending that, as plaintiff's statutory employer, the United States is immune from liability on this negligence action pursuant to the VWCA. As subsequently noted in the government's supplemental brief, this motion is properly treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. After oral argument on February 7, 2003, counsel were directed to file supplemental memoranda. In addition to the supplemental memoranda, the government sought leave to file an additional pleading in response to plaintiff's supplemental memorandum, which plaintiff opposed. By a subsequent joint motion, the parties agreed that all of the pleadings were proper and should be considered by the Court. Thus, all of the briefs are in the record for the purposes of resolving the motion at bar and the question of the government's status as plaintiff's statutory employer is ripe for disposition.

## II.

The FTCA provides a limited waiver of the federal government's sovereign immunity, placing the government on the same footing as a private person with regard to certain types of claims. *See* 28 U.S.C. § 1346(b) (granting district courts jurisdiction over claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). The parties agree that Virginia law applies here, as the alleged tortious conduct and the injury occurred in Virginia. *See Home Indem. Co. of N.Y. v. Poladian,* 270 F.2d 156, 160 (4th Cir.1959) (holding that, in determining whether an action is barred by a state workers' compensation act, the law of the state where the injury occurred governs). Accordingly, the threshold question here is whether, under Virginia law, the VWCA operates to bar plaintiff's action in negligence against the government for her work-related injuries.

Under the VWCA, if the government qualifies as plaintiff's statutory employer, plaintiff's remedies under the VWCA are exclusive, and plaintiff is barred from pursuing her negligence claim against the government. *See* Va.Code § 65.2–302 (defining "statutory employer"), § 65.2–307 (providing that "[t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title ... shall exclude all other rights and remedies of such employee ...").

A statutory employer is defined by the VWCA, in relevant part, as follows:

When any person (referred to in this section as 'owner') undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (referred to in this section as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to

pay if the worker had been immediately employed by him.

Va.Code § 65.2–302 (emphasis added). Thus, under the VWCA, the employees of an independent subcontractor are not necessarily statutory employees of the owner who hires the independent subcontractor. *See Henderson v. Central Telephone Co. of Va.,* 233 Va. 377, 381, 355 S.E.2d 596 (1987). Instead, the critical test under the statute is whether the work contracted constitutes "work which is part of [the owner's] trade, business or occupation." *Id.* Thus, the question presented here is whether the work performed by plaintiff, namely the cooking of meals to be served at Quantico, constitutes a part of the Marine Corps' "trade, business, or occupation."

■ The general test for determining whether an employee of a subcontractor was performing work that is part of the owner's "trade, business, or occupation" is found in the Supreme Court of Virginia's decision in *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972). The test set forth in *Shell* is whether the work performed by a subcontractor "is, in the business, *normally* carried on through employees rather than independent subcontractors," except where "the work is obviously a subcontracted fraction of a main contract." *Id.* at 722, 187 S.E.2d 162.

■ Importantly, however, the Supreme Court of Virginia does not apply the *Shell* test in every instance; instead, that court has made clear that a modified test is applicable where the potential statutory employer is governed by statutes or regulations that define the scope of the entity's business, in which case those statutes and regulations are determinative of the entity's "trade or business." *See Henderson,* 233 Va. at 382–83, 355 S.E.2d 596 (citing the *Shell* test but declining to follow it with regard to a public utility, whose "duties, obligations, and responsibilities" were mandated by statute and regulation); *Pendley v. United States,* 856 F.2d 699, 701 (4th Cir.1988) (noting that the *Shell* test "is not utilized in each instance" and applying the *Henderson* approach in a case involving the United States Air Force).[5] According to *Henderson,* the *Shell* test is designed for private businesses, because those entities "often define their trade, business, or occupation by their conduct." *Id.* at 383, 355 S.E.2d 596. Yet, "public utilities and governmental entities are of another class," for they are not "self-determining" in the way private businesses are. *Id.* Indeed, the Supreme Court of Virginia determined that it would be "illogical to disregard what [a public utility or governmental entity] is required by law to do when attempting to determine its trade, business or occupation." *Id.* Thus, "in cases involving government entities, we have consistently considered the laws under which they were created and under which they functioned in determining their

---

5. *Henderson* 's modification of the *Shell* test has been followed by the Fourth Circuit and confirmed by the Supreme Court of Virginia in subsequent cases. *See Pendley,* 856 F.2d at 701–02 (applying the *Henderson* approach in a case involving the Air Force); *Roberts v. City of Alexandria,* 246 Va. 17, 19, 431 S.E.2d 275 (1993) (noting that "[t]he statutory-employer test applied to governmental entities differs from that usually applied to private business entities" and applying *Henderson* );

*Ford v. City of Richmond,* 239 Va. 664, 666, 391 S.E.2d 270 (1990) (same); *Nichols v. VVKR, Inc.,* 241 Va. 516, 521, 403 S.E.2d 698 (1991) (discussing the different tests for private and governmental entities; *see also Hyman v. United States,* 796 F.Supp. 905, 907 (E.D.Va. 1992) (applying the *Henderson* test to a case involving the Navy). Thus, under Virginia law and Fourth Circuit precedent, the *Henderson* test guides the statutory employer determination here, as the Marine Corps is, indisputably, a government entity.

trade, business, or occupation." *Id.* at 384–84, 355 S.E.2d 596. In other words, the scope of a governmental entity's trade or business is governed by a consideration of what the entity is "authorized and empowered by legislative mandate to perform." *Roberts*, 246 Va. at 19, 431 S.E.2d 275 (citing *Ford*, 239 Va. at 669, 391 S.E.2d 270).

■ These principles applied to the instant facts compel the conclusion that the Marine Corps is plaintiff's statutory employer under the VWCA. To begin with, it is incontestable that the Marine Corps is required by statute and regulation to provide meals for its enlisted members, and therefore that the work subcontracted out to American Service Contractors and performed by plaintiff is part of the Marine Corps' "trade, business, or occupation." The Marine Corps, as part of the Navy, is required to provide the meals to which its enlisted members are entitled by statute. *See* 10 U.S.C. § 6081(a) (providing that "[e]ach enlisted member of the naval service is entitled to a Navy ration for each day that he is on active duty, including each day he is on leave"). Detailed regulations govern the provision of these meals. *See* Marine Corps Order 10110.34E (1992) (Def. Reply Br. att. B). These regulations are expansive, defining what type of rations will be supplied where in which circumstances; setting standards for menu planning, food preparation and storage, safety, inventory levels, and absenteeism; and covering topics such as the accommodation of religious dietary concerns and the encouragement of low fat milk consumption. *Id.* The Order specifically states that the "[a]dministration of the food service program by Marine Corps activities is a function of command," and that "[c]ommanders shall ensure that the personnel under their charge are provided with food which is of good quality, suffi-

cient quantity, and is *well prepared.*" *Id.* (emphasis added). In short, providing enlisted Marines with their "chow" is, according to applicable statutes and regulations, a necessary part of the Marine Corps' business. And, there is no question that plaintiff's employment as a cook at Quantico was in furtherance of the Marine Corps' food service business. Accordingly, under the test in *Henderson*, the Marine Corps is plaintiff's statutory employer for the purposes of the VWCA, and, pursuant to § 65.2–307, plaintiff is limited to her rights and remedies under the VWCA.

■ Plaintiff claims that it is improper to dismiss this action at the threshold for lack of jurisdiction, contending that material facts remain in dispute. Plaintiff notes, correctly, that the statutory employer determination is a "mixed question of law and fact," which "does not readily yield to categorical or absolute standards." *Henderson*, 233 Va. at 382, 355 S.E.2d 596 (citing *Bassett Furniture v. McReynolds*, 216 Va. 897, 902, 224 S.E.2d 323 (1976)). Nonetheless, defendant will prevail at the threshold on a motion to dismiss for lack of subject matter jurisdiction if "the material jurisdictional facts are not in dispute." *Richmond*, 945 F.2d at 768. That is precisely the case here. Given the incontestable statutory and regulatory mandate which guides the statutory employer determination here, *i.e.* the requirement that the Marine Corps provide meals for its enlistees, the facts which plaintiff contends are in dispute are simply not material to the statutory employer determination in this case.

■ Plaintiff asserts that a question remains as to whether the food preparation services performed by plaintiff are part of the Marine Corps' "trade, business, or occupation," because there is a factual dispute as to whether food preparation is "*normally* carried on through employees

rather than independent subcontractors." *Shell Oil*, 212 Va. at 722, 187 S.E.2d 162. To be sure, the record indicates that Quantico has contracted out its food preparation to subcontractors since at least 1985 with only one brief exception. Thus, as in *Pendley*, were the *Shell* test applicable the Marine Corps "might well not be a statutory employer, since [its] personnel did not normally perform the type of work [plaintiff] did." *Id.* at 701. Yet, this is irrelevant, since the *Henderson* test applies here and the statutory mandate directing the Marine Corps to provide meals is dispositive.[6] *Id.* at 702. The fact that the Marine Corps has chosen to fulfill that mandate by contracting out food preparation, rather than using Marine Corps civilian employees, does not negate the effect of the statutory mandate. *See Henderson*, 233 Va. at 379, 355 S.E.2d 596 (holding that a public utility was the statutory employer of a contractor's employee, where the utility could have performed the installation work in question but normally chose not to do so for economic reasons). In sum, the question of whether the Marine Corps normally contracts out its food preparation may be in dispute, but it is not material.

■ Likewise, plaintiff contends that a material question remains concerning the level of control exercised by the Marine Corps over its food services contractors and American Services Contractors' status as an independent contractor. In this regard, plaintiff relies on the VWCA's definition of "employee," which states, in part, that "nothing in this title shall be construed to make the employees of any independent contractor the employees of the person or corporation employing or contracting with such independent contractor." Va.Code § 65.2–101. Yet, as the Supreme Court of Virginia has noted, this language stands simply for the proposition that an independent contractor is "not necessarily" a statutory employee; it does not follow that an independent contractor cannot be a statutory employee. *See Henderson*, 233 Va. at 381, 355 S.E.2d 596 (holding that " § 65.1–5 [now § 65.2–101] provides, in essence, that the mere fact a business owner engages an independent contractor does not make that independent contractor's employees statutory employees of the owner," and finding that defendant in that case is therefore "not necessarily" a statutory employer). Instead, "more must be proved," namely that the work performed was part of the owner's "trade, business, or occupation," as required by § 65.2–302. *Id.* Clearly, then, a government entity may be the statutory employer of an independent contractor, provided the *Henderson* test is met.[7] *Id.* at 383, 355 S.E.2d 596.

Plaintiff also contends that it would be improper to decide this motion at the threshold on the basis of "piecemeal affidavits," without providing plaintiff an oppor-

---

**6.** The *Shell* test was applied to a governmental entity, the National Aeronautics and Space Administration (NASA), in *Vandergrift v. United States*, 500 F.Supp. 237, 242–43 (E.D.Va. 1979), which is relied on by plaintiff. There it was held that NASA was not a statutory employer because the work that the contractor performed was not work that NASA "generally does, or has ever done." *Id.* at 244. However, *Vandergrift* predates *Henderson*'s modification of the *Shell* test for government entities, and thus is not persuasive here.

**7.** In *Henderson*, the Supreme Court of Virginia discussed the level of control and monitoring exercised by the public utility over the subcontractor in its initial statement of facts. *Id.* at 379, 355 S.E.2d 596. Yet, the *Henderson* court did not address those facts in determining that the public utility was the subcontractor's statutory employee, but focused instead purely on the public utility's statutory mandate. *Id.* at 383–85, 355 S.E.2d 596.

tunity for discovery or a right to cross-examine the affiants. Yet, Major Velez's affidavits, which discuss the Marine Corps' procedures in providing food service at Quantico and elsewhere and the level of control exercised by the Marine Corps over its subcontractors, are not material with regard to the statutory employer determination. Although properly considered as evidence in this motion,[8] the affidavits are neither dispositive nor material. It is clear that plaintiff was engaged in providing food services in furtherance of the Marine Corps' statutory duty to provide its enlistees at Quantico with meals. As discussed above, whether or not contracting out those services is the Marine Corps' "normal" procedure is ultimately not material given *Henderson.* Nor is it material whether or not American Service Contractors is an independent contractor. Thus, there is no need for plaintiff to conduct cross examination regarding Major Velez's affidavits, nor is further discovery necessary with regard either to the Marine Corps' customary practices at Quantico or the level of control exercised by the Marine Corps over its food services contractors. Again, any dispute over these facts is not material.

Finally, plaintiff contends that a material dispute remains as to whether plaintiff is subject to the VWCA, absent some showing that plaintiff accepted the provisions of the Act or was notified of its applicability. As an initial matter, plaintiff's receipt of workers' compensation benefit payments from Kemper, American Service Contractors' workers' compensation insurance provider, would appear to constitute acceptance of the VWCA. Yet, plaintiff contends that although she has received and retained those benefit pay-

ments, she has not accepted the provisions of the VWCA because she has not filed a claim with the Virginia Workers' Compensation Commission and has agreed to reimburse Kemper for the benefits paid if she prevails in this action. Essentially, plaintiff is arguing that the VWCA is elective, relying on the language of § 65.2–307, which holds that the rights and remedies provided by the VWCA are exclusive "when [plaintiff's] employer and [plaintiff] *have accepted* the provisions of this title respectively" (emphasis added); *see Evans v. Newport News Shipbuilding and Dry Dock Co.,* 361 F.2d 364 (4th Cir.1966) (quoting acceptance language but not discussing standard for acceptance); *Combs v. Virginia Electric & Power Co.,* 259 Va. 503, 507 n. 3, 525 S.E.2d 278 (2000) (same).

■■■ The short answer to plaintiff's argument is that under the VWCA "every employer and employee, except as herein stated, shall be *conclusively presumed* to have accepted the provisions of the title respectively to pay and accept compensation for personal injury ... arising out of and in the course of employment, and shall be bound thereby." Va.Code § 65.2–300(A) (emphasis added);[9] *see Bristow v. Safway Steel Products,* 327 F.2d 608, 609 (4th Cir.1964) (noting that, under the statute, "[a]n employee is presumed to have accepted the Workmen's Compensation Act"). In other words, coverage by the VWCA is not elective; instead, in accord with the legislative intent of the VWCA, the Act is "exclusive in the industrial field so that, in the event of an industrial accident, the rights of *all those engaged in the business would be governed solely thereby.*" *Doane v. E.I. du Pont De Nemours*

**8.** *See supra* n. 3.

**9.** The exception to this "conclusive presumption" is for executive officers who have elect-

ed to reject coverage under the title, and thus is not applicable here. *See* Va.Code § 65.2–300(B)–(D).

& Co., 209 F.2d 921, 923 (4th Cir.1954) (emphasis added) (quoting *Feitig v. Chalkley*, 185 Va. 96, 102, 38 S.E.2d 73 (1946)); *see also McCotter v. Smithfield Packing Co.*, 849 F.Supp. 443, 446 (E.D.Va.1994) (holding that "[w]hen an employee in Virginia is injured in the performance of her duties for her employer, the VWCA provides her sole and exclusive remedy"). Thus, the question whether plaintiff, by accepting the insurance payments but not filing a claim with the Virginia Workers' Compensation Commission, has "accepted" the VWCA is not material, as she is "conclusively presumed" to have done so. Va. Code § 65.2–300(A).

In sum, the Marine Corps is plaintiff's statutory employer pursuant to § 65.2–302 because the Marine Corps is required by statute to provide its enlistees with meals, and the food preparation services performed by plaintiff were clearly in furtherance of that effort. *See* 10 U.S.C. § 6081(a). The statutory mandate to provide meals is a matter of record and therefore incontestable  Nor is there any question that plaintiff's food preparation activities were in furtherance of the Marine Corps' efforts to meet it food service duties. Thus, any remaining dispute regarding the Marine Corps' normal practices for the provision of meals, its history of doing so at Quantico, or the nature of the contractual relationship between the Marine Corps and its food service contractors is not material to whether the Marine Corps is the plaintiff's statutory employer under the VWCA. Nor is there a material dispute as to whether plaintiff accepted coverage under the VWCA, as she is "conclusively presumed" to have done so under the statute. *See* Va.Code § 65.2–300(A). Accordingly, under Va Code § 65.2–307, plaintiff's rights under the VWCA are her sole and exclusive remedy, and this matter must be dismissed for lack of subject matter jurisdiction.

An appropriate accompanying order has issued.