William E. BLOOMER, Jr., Plaintiff,

Liberty Mutual Insurance Company as subrogee of Connecticut Terminal Company, Intervenor,

v.

C. Y. TUNG and Eckert Overseas Agency, Inc., Defendants.

No. 74 Civ. 1422 (CHT).

United States District Court, S. D. New York.

March 27, 1978.

---

** The complaint avers (para. 2) that TVA is "a corporation wholly owned by the United States Government."

Rassner, Rassner & Olman, New York City, for plaintiff; Alan C. Rassner, New York City, of counsel.

Semel, McLaughlin & Boeckmann, New York City, for intervenor; John M. Dellicarpini, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

The individual plaintiff longshoreman was injured aboard defendants' vessel, instituted an action to recover for his injuries, and settled his claim against the defendants in the amount of $60,000. After the injury and before settlement, plaintiff was paid a total of $17,152.83 in workmen's compensation and medical benefits by his employer's subrogee, the intervenor Liberty Mutual Insurance Company. *See* Longshoremen's and Harbor Workers' Compensation Act ("Act"), 33 U.S.C. §§ 901 et seq. The statutory scheme contemplates that a lien arise in favor of the payor of any such compensation in case of a recovery against a third party. 33 U.S.C. § 933. Therefore, because plaintiff has recovered far in excess of his compensation benefits, the insurer will be fully reimbursed from the settlement fund.

The plaintiff has now moved this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules") for an order declaring that the insurer be required to bear a proportionate share of the attorney's fees incurred by the individual plaintiff in litigating his claim to settlement. Upon examination of the law in this Circuit, the Court concludes that the plaintiff's request must be denied.[1]

---

1. There is a split of authority in the circuits which have addressed this question. *Compare Chouest v. A & P Boat Rentals, Inc.,* 472 F.2d 1026 (5th Cir.), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973) (recovery exceeded stevedore's lien by modest sum; legal fees paid proportionately by plaintiff and lienor), *and Swift v. Bolten,* 517 F.2d 368 (4th Cir. 1975) (recovery ample to cover lien and attorney's fees with balance to longshoreman-plaintiff; proportional sharing of legal fees ordered), *with Cella v. Partenreederei MS Ravenna,* 529

In 1972 the Congress restructured the laws governing work-related injuries to longshoremen and jettisoned cumbersome accretions to the prior law in favor of more certain and generous compensation to the protected class. After 1946 and until 1972, longshoremen had been permitted to invoke the unseaworthiness doctrine of liability without fault against the shipowner, *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); after 1956 the shipowner could seek indemnity from the stevedore based on a warranty of workmanlike performance. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). "The net result in most cases was that the stevedore became liable without fault for injuries to its employees." *Valentino v. Rickners Rhederei, G.m.B.H.*, 552 F.2d 466, 468 (2d Cir. 1977).

Since the 1972 amendments the *Seas Shipping* and *Ryan* doctrines have been abolished, and currently an injured longshoreman has six months in which to sue the shipowner for negligence, hoping to recover more than the compensation benefits he is still paid under the statutory scheme. In the event the longshoreman does not sue within six months, the stevedore may sue in the longshoreman's name. In the latter case the statute provides for the stevedore to retain from the judgment or settlement against the third party an amount equal to the compensation already paid out to the longshoreman, plus costs and attorney's fees. The excess, if any, is shared between stevedore and longshoreman according to a statutory formula. However, the statute is silent as to the distribution of the recovery in the event suit is brought by the longshoreman.

That silence confronted the United States Court of Appeals for the Second Circuit in *Valentino, supra*, forcing the court to formulate a rule "that complements the statutory scheme." 552 F.2d at 468. Although *Valentino* had quite different facts from the instant case, a close reading of the opinion and its juridical antecedents leads this Court to conclude that the theory it endorses is dispositive of these facts as well.

In *Valentino* the court of appeals was called upon to determine whether under the amended law attorney's fees would be paid out of the recovery where the longshoreman recovered *less* than the benefits already paid out by the stevedore. A decision in favor of deducting attorney's fees from the recovery would have meant that the stevedore's recoupment on its lien would be diminished and, in effect, that the stevedore would have paid for the longshoreman's attorney. The court below concluded that the attorney should be paid from the recovery, *see Valentino v. Rickners Rhederei, G.m.B.H.*, 417 F.Supp. 176 (E.D.N.Y.1976) (Weinstein, J.), and that decision was affirmed. However, the affirmance did not endorse Judge Weinstein's broad recommendation that a "rule of proportional sharing [should] apply to attorneys fees in longshoremen's suits no matter what the recovery." *Id.* at 178.

Of course, the proportional sharing theory is precisely what plaintiff is advocating here. The concept of proportional sharing is predicated on the fact that the 1972 amendments to the Act have allied the longshoreman and the stevedore in seeking recovery against a third party. A fortiori, it is contended that when the longshoreman sues, the stevedore should be required to pay pro rata for the services of the longshoreman's attorney, for it is through the latter's efforts that a recovery accrues out of which the stevedore recoups the compensation he paid to the longshoreman. However, although the court of appeals acknowledged in *Valentino* that "[t]he stevedore should not realize a windfall simply because its employee has chosen to exercise a right granted by Congress," 552 F.2d at 469, it did not endorse Judge Weinstein's theory of proportional sharing and instead hewed to principles enunciated in *Fontana*

F.2d 15 (1st Cir. 1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976) (declining to follow *Swift, supra,* court found con-

gressional intent to fully reimburse stevedore and to deduct attorney's fees from longshoreman's recovery in excess of benefits).

*v. Pennsylvania R.R.,* 106 F.Supp. 461 (S.D. N.Y.1952) (Weinfeld, J.), *aff'd sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). In the course of its opinion the court of appeals overruled *Spano v. N.V. Stoomvaart Maatschappij "Nederland",* 340 F.Supp. 1194 (S.D.N.Y. 1971), and *Russo v. Flota Mercante Grancolombiana,* 303 F.Supp. 1404 (S.D.N.Y.1969), cases purporting to depend on *Fontana* for support.

This somewhat anomalous situation was explained by the *Valentino* court in the following way: In *Fontana* the plaintiff longshoreman sued and recovered only slightly more than what had been paid him in compensation; after satisfaction of the compensation lien and payment of attorney's fees, he would have had little or nothing for himself. Nevertheless, Judge Weinfeld ruled that the statute "treats the recovery as a fund charged first with the expense of the litigation and then with the amounts paid for compensation and medical expenses" and that "[t]he expense of securing the recovery is . . . a first charge against the fund itself." 106 F.Supp. at 463–64, *quoted with emphasis in Valentino, supra,* 552 F.2d at 469–70. Judge Weinfeld saw no reason to distort the statutory plan simply because it was the longshoreman who sued and not the stevedore; consequently the employer received whole whatever he had paid in compensation and the longshoreman's attorney likewise received his fee from the recovery.

After the *Fontana* doctrine was enunciated, the Supreme Court issued the *Ryan* decision which gave the shipowner indemnity as against the stevedore. Thereafter the *Russo* and *Spano* cases arose. In those cases, as in *Valentino,* the fund recovered upon the longshoreman's suit was inadequate to reimburse the stevedore for compensation paid out. However, at this point in the development of the law it was often the stevedore who was funding the recovery under the *Ryan* indemnity doctrine. Thus, to have deducted attorney's fees from the recovery which, under *Ryan,* might be coming from one pocket of the stevedore only to be returned to the other pocket in satisfaction of the statutory lien was to "charge the stevedore for the privilege of being sued." *Valentino, supra,* 552 F.2d at 470. To avoid this inequity, the *Russo* and *Spano* courts fastened on that aspect of *Fontana* which construed the governing statute to first make the stevedore whole, *Spano, supra,* 340 F.Supp. at 1196, and the rule became one of primacy of the stevedore's lien over the attorney's lien where the longshoreman sued and there was a shortfall between recovery and compensation paid out. *Russo* and *Spano* made no reference to the fact that the Act contemplated only that scenario where the stevedore sued and was obliged to pay his own attorney's fees, or that the Act's concept of "making the stevedore whole," as construed in *Fontana,* included paying the attorney out of the fund recovered. Instead, *Russo* and *Spano* justified the fee refusal on the theory that the attorney had produced no benefit for either his longshoreman client or for the stevedore, who was at this point indemnifying himself under *Ryan.*

■ When the Congress abolished the unseaworthiness and stevedore's indemnity doctrines in favor of direct negligence suits by the longshoreman or stevedore against the third party shipowner, the potential conflict of interest between the longshoreman and stevedore evaporated. The *Valentino* court therefore reasoned that the way was paved for overruling *Russo* and *Spano* [2]

---

**2.** The same rationale as supported the *Russo* and *Spano* cases in this circuit underlay the Fourth Circuit decision in *Ballwanz v. Jarka Corp.,* 382 F.2d 433 (4th Cir. 1967); likewise, the 1972 amendments and the resolution of the conflict of interest between longshoreman and stevedore led the Fourth Circuit to hold *Ballwanz* no longer applicable. *Swift, supra,* 517 F.2d at 369–70. Despite plaintiff's assertion that this circuit "clearly adopted and, in fact, stated that it reached the same conclusion as the Fourth Circuit in *Swift,*" Plaintiff's Reply Memorandum 3, there is no hint in *Valentino* that the court of appeals "adopted" the proportional sharing theory endorsed by *Swift,* or that the case was cited by the court of appeals in this circuit for any other than the limited proposition that the 1972 amendments obviate the need to refuse counsel fees where the longshoreman's recovery is inadequate.

to permit attorney's fees to be deducted from the fund recovered from the third party, regardless of the amount of the fund. On the *Valentino* facts, *i. e.,* less recovery than compensation paid out, the stevedore had at least recouped some of what it had already paid, and that much only through the efforts of the longshoreman's attorney. Equity therefore dictated that "a lawyer who creates a fund for the benefit of another is entitled to reasonable compensation for his efforts." *Valentino, supra,* 552 F.2d at 468–69. Furthermore, although the instant facts were not before the court of appeals in *Valentino,* and although the *Valentino* court stated that *Fontana* "does not address the situation we have here, where the longshoreman does not share in the recovery and only the stevedore can pay," *id.* at 470, *Valentino* disposes of the facts sub judice with this statement: "[In disapproving *Russo* and *Spano*] we do not disturb *Fontana's* holding on the allocation of the attorney's fee *from the award." Id.* (emphasis added). Indeed, the allocation of the attorney's fee from the insufficient award in *Valentino* is entirely consistent with this Court's conclusion that the fundamental principle of *Fontana* has been affirmed sub silentio as to recoveries such as the one at bar which are adequate to reimburse the lienor and the attorney: it is the fund recovered that is charged—first for the cost of the recovery, including attorney's fees whether incurred by the longshoreman or the stevedore; next in reimbursement of the stevedore; and finally as additional compensation for the plaintiff longshoreman.

■ For the foregoing reasons, summary judgment is denied to the plaintiff and awarded instead to the intervenor Liberty Mutual Insurance Company as subrogee of the stevedore Connecticut Terminal Company. Attorney's fees are to be awarded first from the sum recovered by plaintiff upon settlement with the defendant, and the intervenor is to be reimbursed in full for the compensation lien it holds pursuant to 33 U.S.C. § 933(h).

Settle judgment on notice.