## CIRCUIT COURT OF STAFFORD COUNTY

Aquia Harbour Property
Owners Association, Inc.

v.

Stafford County
Board of Supervisors et al.

November 4, 1987

Case Nos. (Law) 552-85, (Chancery) 553-85

By JUDGE WILLIAM H. LEDBETTER, JR.

The issue to be decided is whether Harry R. Mathis (Mathis), a lot owner in Aquia Harbour and apparently a member of the Aquia Harbour Property Owners Association, Inc. (the Association), should be permitted to intervene in this action.

The Association filed these suits, one at law and the other in chancery, seeking relief against real estate taxes claimed by the County against the Association's property for the years 1979-1985. The Association alleges that the assessments are erroneous and that the taxes levied are invalid. It claims that the property, which comprises the common areas of Aquia Harbour, has been assessed at full value rather than at a drastically reduced value reflective of the adverse impact of servitudes that burden the property for the benefit of the lot owners in the subdivision. In its prayer for relief, the Association asks for a declaration that the taxes are unconstitutional and thereby uncollectible; for an order requiring that tax liens be removed; for an order requiring that

the commissioner of revenue reassess the Association's property consistent with applicable law; and for other incidental relief under Title 58.1 of the Virginia Code.

In their responsive pleadings, the defendants deny that the assessment is erroneous and argue, in the alternative, that the correction of any assessment prior to 1982 is barred by the statute of limitations. In addition, the county treasurer, one of the defendants, filed a counterclaim for collection of the unpaid taxes.

It is obvious from the pleadings and the discovery documents that the subject matter of this litigation has been the source of controversy between the Association and the County for many years. In essence, the Association has contended, in one form or another, that its property is burdened by servitudes and, for property tax purposes, the value of its servient property should be reduced to reflect that diminution in value. The Association has collected real estate taxes on these common areas from its members for many years, but has refused to pay the taxes to the County. It is not mere coincidence that shortly after the Virginia Supreme Court's decision in *Lake Monticello Owners' Association v. Ritter*, 229 Va. 205 (1985), the dispute moved from the conference room to the courtroom.

The Association filed this action on December 31, 1985. After the parties were at issue, they conducted discovery over many months. The suits were set for trial on October 15, 1987.

A few days prior to trial, counsel advised the court that all matters in controversy had been settled. They asked for a meeting with the judge, in vacation, to review the terms of their proposed final settlement order.

Meantime, on October 9, 1987, Mathis, upon learning of the settlement, filed a request to intervene. The written request sets forth his reasons for intervention. On October 14, 1987, Mathis filed a formal "motion to intervene under Rule 2:15," and also filed his proposed responsive pleadings, with several exhibits.

On October 15, 1987, the court heard Mathis's motion. The Association and the defendants, who still maintained that they had settled their controversy (subject to the fine-tuning of a few details), opposed the intervention and were permitted to file written memoranda in opposition

by October 29, 1987. The parties filed memoranda detailing their opposition to Mathis's intervention.

Mathis states seven grounds, or "reasons," for his motion to intervene. None of them has merit.

Contrary to the intervenor's allegations, the Association does not presume to represent Mathis in this litigation, and does not seek to have the real estate taxes "transferred" from the Association's property to his property.

With respect to the first contention, the Association is a non-stock, membership corporation. In the absence of evidence to the contrary, the court must assume that its officers and directors have authority to retain counsel, prosecute the suit, and negotiate a settlement. There is nothing in the record to indicate otherwise. If Mathis is a dissatisfied minority member of the corporation, his remedy is not intervention in this litigation.

As for the second contention, it is true that all real estate in Aquia Harbour may eventually be reassessed as a byproduct of this litigation and settlement. It is also true that one result of such a reassessment may be an increase in Mathis's property tax. In response to such assertion, however, three observations are pertinent. First, a party is not entitled to intervene in litigation, especially after it has been settled, merely because one byproduct of the settlement may be that he is adversely affected. If this were so, auto liability insurance policyholders could intervene in every major wrongful death settlement on the basis that the settlement would, or might, cause an increase in policy premiums. Second, if and when there is a wholesale reassessment of Aquia Harbour properties, it must be done in proper manner, and Mathis will be entitled to contest any revised assessment of his property in the manner prescribed. Third, as the defendants point out in their memorandum, the commissioner of revenue has the statutory authority to correct erroneous assessments with or without this litigation.

Even assuming that Rule 2:15 is applicable here, the intervenor has asserted no right involved in the suit and has asserted no claim germane to the subject matter of the suit.

Finally, the motion comes too late. It is obvious that Mathis has been aware of the litigation and has

followed developments closely. Under such circumstances, he cannot be permitted to stand by for almost twenty-two months, and then, when the controversy has been compromised and settled, to ask leave to intervene over a disagreement with the terms of the settlement.

The motion to intervene will be denied.