# RICHARD J. NICHOLS

## v.

# VVKR, INC., ET AL.

Record No. 901003

April 19, 1991

Present: All the Justices

*Frank W. Rogers, III (Mundy, Rogers & Frith*, on brief), for appellant.

*Murray H. Wright (William L. Thurston; Wright, Robinson, McCammon, Osthimer & Tatum*, on brief), for appellee VVKR, Inc.

No brief or argument for appellees Richard L. Williams, Richard L. Williams Consulting Engineers, Inc. and Heindl-Evans, Inc.

JUSTICE LACY delivered the opinion of the Court.

In this case we consider whether an injured employee and an allegedly negligent architectural and engineering firm are statutory fellow employees under the Virginia Workers' Compensation Act, Code §§ 65.1-1, *et seq.*, thereby barring a common law negligence action by the injured employee against the firm.

The Campbell Court Transportation Station/Mini-Mall (the Project) was a construction/rehabilitation project designed to provide public mass transportation facilities, downtown parking facilities, retail and office space facilities, and revitalization and urban redevelopment of a downtown commercial shopping district in the City of Roanoke. The Greater Roanoke Transit Company (GRTC) and the City each executed contracts with an architectural and engineering firm, VVKR, Inc., for the provision of services in various phases of the Project. GRTC contracted with Heindl-Evans, Inc. to construct the Project. During the construction, a facade collapsed, injuring Richard J. Nichols, an employee of Heindl-Evans.

Nichols filed a negligence action against VVKR.[1] The trial court sustained VVKR's motion for summary judgment, finding that

GRTC is an agency of the City of Roanoke; the renovation portion of the Project on which the Plaintiff was allegedly injured was a City of Roanoke project . . . on which the Plaintiff was employed as a laborer and VVKR was employed as architect. Both VVKR and the Plaintiff were involved in work which is part of the trade, business, or occu-

---

[1] The City and GRTC also were named originally as defendants. The trial court sustained the City's plea of governmental immunity and GRTC's demurrer. Nichols' appeal from that decision was denied.

pation of the City of Roanoke, and are "statutory fellow employees".

Therefore, the trial court held that Nichols' common law negligence action was barred by the Workers' Compensation Act. We awarded Nichols an appeal.

■ The dispositive legal principle here is well established: Contractors, subcontractors, and all workers who are engaged in the trade, business, or occupation of the owner of a project are deemed to be statutory fellow employees. The remedy for any injury suffered by one of them as a result of the alleged negligence of another, while engaged in the trade, business, or occupation of the owner, is limited to that available under the Workers' Compensation Act. *Evans* v. *Hook*, 239 Va. 127, 387 S.E.2d 777 (1990); *Smith* v. *Horn*, 232 Va. 302, 351 S.E.2d 14 (1986); *Lucas* v. *Biller*, 204 Va. 309, 130 S.E.2d 582 (1963); Code §§ 65.1-29, -31, -40.

■ Whether Nichols' and VVKR's actions constituted the Project owner's trade, business, or occupation is a mixed question of law and fact and the answer is dependent upon the facts and circumstances of the case. *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 899, 224 S.E.2d 323, 324 (1976). Unlike our previous cases, the circumstances here require that we first identify the owner of the Project. While the trial court referred to the Project as one "jointly undertaken by the City and GRTC," it did not identify either or both entities as the Project owner. A review of the history of the Project and associated documents contained in the record before us discloses, however, that, while the Project may have been a joint undertaking as characterized by the trial court, GRTC, not the City, was the owner.

The Project, originally called the Roanoke Intermodal Transportation Terminal, was funded by an Urban Mass Transit Administration (UMTA) grant of $2,097,280 to GRTC for the construction of a facility making various transportation services and vehicles accessible to the public. As grantee, GRTC was required to and did acquire the land for the Project in its name. At this point, the Project included some rehabilitation of portions of the property adjoining the transportation facility, which would be utilized as retail space. Subsequently, the City applied for and received a $612,400 grant from the Economic Development Admin-

istration (EDA) for the balance of the Project's retail rehabilitation component.[2]

In April 1981, GRTC executed a contract with VVKR to provide architectural, engineering, design, and construction supervision services for the entire Project, including activities funded by the EDA and UMTA grants. By this time, the Project was called the Transportation Station/Mini-Mall.[3] Apparently in response to the EDA grant requirements that the grantee provide an executed architectural agreement, the City executed a contract with VVKR in August 1981. That contract, although similar to the GRTC-VVKR contract, was limited to services related to the "EDA Rehabilitation Components" of the Project, which were identified as the "restoration, replacement and rehabilitation of buildings on the site and facilities required for the integration of the buildings with the Transportation Station to form the Transportation Station/Mini-Mall complex."

■ In 1982, the City and GRTC executed an agreement "to establish certain terms and conditions governing the relationship between GRTC and City, with respect to the funding of the project." In that agreement, GRTC and the City provided that GRTC would conduct the bidding and contracting processes for the Project, and "manage and assume responsibility for the construction of and own the project." They also specified that the "City shall have no privity of contract with the project construction contractor and that City shall not be party to or bound by the project construction contract." Finally, the agreement established procedures to insure that the costs of the Project were billed to the appropriate grantee and paid from the appropriate grant monies.

GRTC then executed a contract with Heindl-Evans in November 1982 for the construction of the entire Project. In that contract, GRTC was again referred to as "OWNER." Heindl-Evans employed Nichols as a laborer, and he was injured while he was working on the retail space rehabilitation portion of the Project.

■ On this record, GRTC must be considered the owner of the Project. The City and GRTC stated in their contract that GRTC was to be the owner of the entire Project, and the City had no contractual relationship with Heindl-Evans and renounced any connection with or responsibility for the construction contract or

---

[2] State and local funds also were involved in the Project.

[3] The Project was alternatively referred to as GRTC project number 08-05 and as the City of Roanoke Project No. 08-05.

actual construction of the Project. The City's contractual participation in the Project resulted solely from the EDA grant, which GRTC was ineligible to receive. The City's contract with VVKR was a mechanism to satisfy the terms of the EDA grant, not to exercise control or ownership over the Project, as the GRTC/VVKR contract already covered the same services for the entire Project.

■ GRTC undertook the Project, supervised its construction, and was designated as the owner of the entire Project. Therefore, to be statutory fellow employees Nichols and VVKR must have been engaged in the trade, business, or occupation of GRTC.

■ The analysis of a project owner's trade, business, and occupation begins with identification of the nature of the particular owner. A private entity has broad discretion to choose its business activities. Many activities may be important to the success of the business, but would not necessarily constitute the trade, business, or occupation of the owner. Therefore, if the owner is a private entity, we have repeatedly focused on whether the "activity is, in that business, *normally* carried on through employees rather than independent contractors." *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972).

■ A governmental entity or a public utility does not share the ability to choose its activities. Therefore, if the project's owner is a governmental agency or a public utility, any activity which the owner is authorized or required to do by law or otherwise, is considered the trade, business, or occupation of the owner. *Henderson* v. *Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987); accord *Ford* v. *City of Richmond*, 239 Va. 664, 391 S.E.2d 270 (1990).

VVKR argues that the rule applicable to governmental owners, the *Henderson* test, should be applied here because, as found by the trial court, GRTC is an agency of the City. We disagree.

■ GRTC is a duly chartered corporation authorized to enter into contracts in its own name, to acquire title to real property, as well as to sue and be sued, all of which activities occurred in this instance. GRTC exists separate and apart from the City, regardless of how cooperatively the City and GRTC may function or how the board of directors or the City Council "views" GRTC. *See, e.g., Appalachian Power* v. *Greater Lynchburg Transit*, 236 Va. 292, 374 S.E.2d 10 (1988). Unlike a public utility or a governmental agency, the only requirements placed on GRTC's activ-

ities are those contained in its charter and bylaws, which it can amend, and those it voluntarily or by contract chooses to observe.[4] Application of the *Henderson* test to determine the trade, business, or occupation of GRTC is inappropriate.

VVKR argues, however, that use of the analysis set out in *Shell* is also inappropriate because it looks to the activities normally undertaken by an owner's *employees.* Here, GRTC has no employees. Like the appellant's argument in *Carmody* v. *F.W. Woolworth Co.,* 234 Va. 198, 361 S.E.2d 128 (1987), this argument

> misses the mark. The appropriate inquiry is not whether Woolworth as owner was engaged in the portrait photography business or had ever been, but whether Carmody's sale of portrait photographs was a part of Woolworth's business of operating a department store.

*Id.* at 205, 361 S.E.2d at 132.

The *Shell* test is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case." *Cinnamon* v. *International Business Machines,* 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989). The key issue here is whether construction and rehabilitation of a transportation and retail facility was part of GRTC's business purpose of providing mass transportation services. This purpose is established in its articles of incorporation. Of course, virtually all businesses require some type of physical facility in which or from which their business is conducted. Providing or acquiring this facility is incidental to — perhaps necessary to — conduct of the owner's business, but adaptation of the facility so as to permit conduct of the intended activity is not itself the trade, business, or occupation of the owner.

We have considered construction or repair of such a facility not to be the trade, occupation, or business of an owner for purposes of determining whether a statutory employee or employer relationship exists unless those activities are normally carried out directly by the owner or are part of his normal activities. For example, the construction of physical plants for the production of its computers was not the trade, business, or occupation of

---

[4] GRTC's charter indicates it is a public service company. However, this designation is not synonymous with "public utility," and GRTC is not regulated as a public utility.

IBM, *see id.* at 479, 384 S.E.2d at 622, while the trade, business, or occupation of a land development joint venture included the construction of a brick wall on its property, *see Evans*, 239 Va. at 132, 387 S.E.2d at 779. Nothing in this record supports a conclusion that the construction or rehabilitation of a transportation/retail facility is the trade, business, or occupation of providing mass transportation services, GRTC's clear purpose.

Accordingly, we find that VVKR and Nichols are not statutory fellow employees and the Workers' Compensation Act does not preclude Nichols' common law negligence action. Therefore, the judgment of the trial court will be reversed and the case remanded.

*Reversed and remanded.*