# CIRCUIT COURT OF THE CITY OF NORFOLK

Michael D. Burke

v.

H & H Consolidated, Inc.

March 15, 2001

Case No. L98-2983

BY JUDGE LYDIA CALVERT TAYLOR

This matter comes before the Court on the Defendant's Plea in Bar of the Plaintiff's negligence action. The Plaintiff was an employee of Computer Sciences Corporation, an independent contractor hired by NASA's Goddard Space Flight Center to provide engineering support and related services at the Wallops Island Flight Facility. Plaintiff alleges that on December 12, 1996, he was injured by employees of H & H Consolidated who were handling a 2,160-pound piece of laboratory equipment purchased by NASA's Goddard Space Flight Center for use at its Wallops Island Flight Facility. NASA had hired H & H, an independent contractor, to provide support in the operation and maintenance of the Wallops Island Flight Facility, including the laboratories. As a result of the accident, Plaintiff received workers' compensation by virtue of his employment by CSC. Plaintiff now brings his Motion for Judgment against the Defendant for personal injuries from this accident, alleging that H & H employees were negligent in their duties while in the scope of their employment. The Defendant has filed a Plea in Bar, alleging that the Plaintiff was a "statutory fellow employee" of H & H within the meaning of Code of Virginia § 65.2-302, in that the work delegated to CSC and H & H, by contract with NASA, was part of the "trade, business or occupation" of

NASA. The Defendant contends that Plaintiff's remedy is limited to that provided under the Virginia Workers' Compensation Act.

The issue before the Court is whether the Plaintiff and H & H were engaged in the "trade, business or occupation" of NASA and are therefore statutory fellow employees under the Virginia Workers' Compensation Act. If Plaintiff and H & H are statutory fellow employees, Plaintiff's claim against H & H is barred. In order to determine whether the parties are statutory fellow employees, the Court must first determine which test applies with respect to the relationship between NASA and CSC and H & H, the "governmental entity test," as the Defendant alleges, or the "normal work test," as the Plaintiff alleges.

Wallops Island Flight Facility is a launch and research facility that is part of NASA's Goddard Space Flight Center. NASA launches space payloads, sounding rockets, and other space and scientific vehicles at this facility. Goddard Space Flight Center's responsibilities are set forth in 14 C.F.R. § 1201.200(c)(2). CSC provided employees to work at the Wallops Flight Facility pursuant to a contract originally awarded on July 1, 1995. The contract required CSC to provide metrology support as follows:

> (1) Repairing and/or calibrating instruments using the appropriate standards,
>
> (2) Establishing the stability and accuracy trends on serviced equipment, and
>
> (3) Utilizing and maintaining documented procedures for acceptance of testing of new instruments and for the recall/recalibration of safety critical test equipment.

The Plaintiff was employed by CSC as an electronic technician, and, according to his job description, he was "to provide analytical, mechanical, and electronic support in the installation, maintenance, repair, overhaul, troubleshooting, calibration, modification, construction, and testing of equipment supporting the mission of the Wallops Flight Facility." At the time of Plaintiff's injuries, H & H provided personnel and services at the Wallops Flight Facility pursuant to a contract originally issued on January 1, 1992. H & H was responsible for operating and maintaining the Facility's buildings and performed their responsibilities through six departments, including a rigging department. The rigging specialty included designing slings and hoists, attaching the slings or hoists to a load, and lifting and moving the load. The Plaintiff alleges that members of H & H's rigging crew injured him by negligently handling a piece of equipment, an Instron load cell calibrator, that

was being installed in the calibration laboratory where the Plaintiff was working.

It is well-established under Virginia law that "contractors, subcontractors, and all workers who are engaged in the trade, business, or occupation of the owner of a project are deemed to be statutory fellow employees." *Nichols v. VVKR, Inc.*, 241 Va. 516, 519, 403 S.E.2d 698, 700 (1991). "The remedy for any injury suffered by one of them as a result of the alleged negligence of another, while engaged in the trade, business, or occupation of the owner, is limited to that available under the Workers' Compensation Act."[1] *Id.* The instant case presents a situation in which an employee of a contractor alleges he was injured by employees of another contractor hired by the same owner. This is precisely the situation the Supreme Court assessed in *Nichols*.

The Supreme Court of Virginia has developed several tests for determining whether a contractor is performing the "trade, business, or occupation" of the owner and has established separate tests for governmental entities and private businesses. *See, e.g., Henderson v. Central Tel. Co.*, 233 Va. 377, 383, 355 S.E.2d 596, 600 (1987) (government entities); *see also Roberts v. City of Alexandria*, 246 Va. 17, 431 S.E.2d 275 (1993); *Nichols v. VVKR, Inc.*, 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991); *Ford v. City of Richmond*, 239 Va. 664, 669, 391 S.E.2d 270, 273 (1990); *Shell Oil v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972) (private businesses).

Defendant asserts that the "authorized government activity" test set forth in the *Henderson* line of cases should control. According to that test, "if the project's owner is a governmental agency or a public utility, any activity which the owner is authorized or required to do by law or otherwise is

---

[1] The Virginia Workers' Compensation Act, in Code of Virginia § 65.2-302(A), provides: "When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him."

Code of Virginia § 65.2-307(A) further provides: "The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

considered the trade, business, or occupation of the owner." *Nichols*, 241 Va. at 521, 403 S.E.2d at 701.

Plaintiff asserts that the "authorized government activity" test should not apply because NASA should not be viewed as a "governmental entity" in the context of the instant case and asserts that the proper test to apply is the "private business" test in *Shell Oil v. Leftwich*. The Supreme Court in *Shell Oil* stated that "the test (except in cases where the work is obviously a subcontracted fraction of a main concern) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors." *Id.* at 722, 187 S.E.2d at 167 (quoting A. Larsen, *The Law of Workmen's Compensation* § 49.12).

The Supreme Court in *Henderson* distinguished between the test for government entities and the *Shell Oil* test for private businesses:

> The *Shell Oil Co.* test has never been applied by this Court in a case involving either a public utility or a governmental entity. This is so for good reason. The [*Shell Oil*] test is merely an approach that is useful in determining an entity's trade, business, or occupation. It works best in cases involving private businesses because those entities often define their trade, business, or occupation by their conduct. With regard to such entities, what they do on a day-to-day basis provides a reasonably reliable indicator of their trade, business, or occupation.
>
> Yet, public utilities and governmental entities are of another class. It is not simply what they do that defines their trade, business, or occupation. What they are supposed to do is also a determinant. Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility [or governmental entity] has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means.

*Henderson*, 233 Va. 377 at 383, 355 S.E.2d at 599-600.

Plaintiff, however, contends that NASA is designed and created to operate more like a private enterprise than the type of governmental entity and/or public utility that gave rise to the "authorized governmental activity" test. Plaintiff cites *Nichols* for the proposition that, if an entity is authorized to enter into contracts in its own name, to acquire title to real property, to sue and be sued, and is empowered to amend its controlling authorities as it deems appropriate, the entity is not operating as a governmental entity or public utility, but as a private enterprise. The entity would thus not be assessed under

the "authorized governmental activity" test. In *Nichols*, an employee of a construction company, who was injured while working on a project for the construction and rehabilitation of a transportation and retail center, brought an action against the engineering firm that also worked on the project. The Supreme Court determined that the Greater Roanoke Transit Company (GRTC), not the City of Roanoke, was the project owner. The Court then had to determine whether the *Henderson* test or *Shell Oil* test should apply in order to analyze the project owner's trade, business, or occupation. The Supreme Court determined that the *Shell Oil* test should apply because it determined that GRTC was a private business rather than a government entity.

The Court, however, distinguished GRTC from a normal governmental entity or public utility, not on the basis of GRTC's *functioning* as a private enterprise, but on GRTC's actual *legal status* as a privately held, duly chartered corporation, authorized to enter into contracts in its own name, to acquire title to real property, and to sue and be sued. The Court in *Nichols* cited its decision in *Appalachian Power v. Greater Lynchburg Transit*, 236 Va. 292, 374 S.E.2d 10 (1988), for support. In *Appalachian Power*, a stock corporation wholly owned by a city brought suit against a power company for damages. The Supreme Court held that, while the city was a municipality and thus a governmental entity, the Greater Lynchburg Transit Company was a stock corporation. Although the city was GLTC's sole stockholder, the Court reiterated the view that "a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." *Id.* at 296, 374 S.E.2d at 12 (quoting *Cheatle v. Rudd's Swimming Pool Supply*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987)). The Court, in both *Appalachian Power* and *Nichols*, focused not on the *activities* themselves that the two corporations performed, but rather on the *independent legal corporate form* of the transit companies, which gave rise to the distinct activities the companies were able to perform. The *Henderson* line of cases can thus be distinguished from the *Shell Oil* line of cases on the basis of the party's actual *legal status* as either a government entity or private business.

Further, *Nichols* does not support the proposition that a governmental entity can be characterized as a private business for purposes of determining the agency's trade, occupation, or business. The Supreme Court in *Nichols*, to the contrary, expressly reiterated that, "A governmental entity or public utility does not share the ability to choose its activities. Therefore, if the project's owner is a governmental agency or a public utility, any activity which the owner is authorized or required to do by law or otherwise, is considered the trade, business, or occupation of the owner." (citing *Henderson*, 233 Va. 377, 355 S.E.2d 596 (1987)); *accord Ford v. City of*

*Richmond,* 239 Va. 664, 391 S.E.2d 270 (1990). The Supreme Court has not imposed any qualifications on the application of the "authorized governmental activity" test to any governmental entity.

In the instant case, NASA is a federal government agency established by the National Aeronautics and Space Act, 42 U.S.C. § 2451, *et seq.* (1995). NASA is funded by federal government appropriations. Its employees are appointed in accordance with federal civil service laws. 42 U.S.C. § 2473(c)(2). NASA also has the authority to "consider, ascertain, adjust, determine, settle, and pay, on behalf of the *United States,* in full satisfaction thereof, any claim for $25,000 or less *against the United States* for bodily injury, death, or damage to or loss of real or personal property *resulting from the Administration's functions. . . .*" 42 U.S.C. § 2473(c)(13)(A) (emphasis added). NASA's activities are regulated by both Federal statutes and regulations, and thus NASA clearly meets the definition of "governmental entity" cited by the Virginia Supreme Court in the *Henderson* line of cases. This Court holds that the correct test to apply in this case is the "authorized governmental activity" test cited in the *Henderson* line of cases.

Applying the governmental entity test requires this Court to first determine the trade, occupation, or business that NASA is authorized and empowered to perform as defined by statutes and regulations. Next, the Court must determine whether CSC's and H & H's actions constituted a part of NASA's trade, business, or occupation; the latter question is a mixed one of law and fact that depends on the specific facts and circumstances presented in this case.

NASA's activities are defined, in part, as:

> (3) to acquire, construct, improve, repair, operate, and maintain laboratories, research and testing sites and facilities, aeronautical and space vehicles . . . and such other real and personal property, or any interest therein, as the Administration deems necessary within and outside the Continental United States [and] . . . .
>
> (5) to enter into and perform such contracts, leases, cooperative agreements, or other transactions as may be necessary in the conduct of its work and on such terms as it may deem appropriate, with any . . . person, firm, association, corporation, or educational institution.

42 U.S.C. § 2473(c)(3), (5).

The Space Act also provides that NASA shall, in carrying out the aeronautical and space activities of the United States:

(1) plan, direct, and conduct aeronautical and space activities; and

(2) arrange for participation by the scientific community in planning scientific measurements and observations to be made through the use of aeronautical and space vehicles and conduct or arrange for the conduct of measurements and observations.

42 U.S.C. § 2473(a)(1), (2).

Congress, in its findings accompanying the Space Act, expressly recognized that "the strengthening and expansion of the Nation's space transportation infrastructure, including the enhancement of launch sites and launch site support facilities, are essential to support the full range of the Nation's space-related activities." 42 U.S.C. § 2451, Section 2 Findings.

The Goddard Space Flight Center is the NASA field installation responsible for the operation and maintenance of the Wallops Island Space Flight Facility. The Goddard Space Flight Center's responsibilities are defined in 14 C.F.R. § 1201.200(c)(2). NASA entered into contracts with both CSC and H & H to support NASA's operation of the Wallops Island Facility. The work performed by the Plaintiff and H & H pursuant to the terms of those contracts, which included the delivery and installation of laboratory equipment, was part of NASA's activities as defined in 42 U.S.C. § 2473(c)(3), to "improve, repair, operate, and maintain laboratories, research and testing sites and facilities," to wit, the Wallops Flight Facility and its laboratories.

NASA's contract with H & H specified the following work requirements:

Services furnished shall include, but not be limited to, the O/M (operation and maintenance) of the following items. . . .
    B. *Mechanical*. . . .
        8. Rigging. . . .
        14. Cranes. . . .

The contract further provides:

I. *Description*
    Services are required for the A/M (alteration/maintenance) of approximately 200 facilities consisting of office buildings, shops, laboratories at the WFF Main Base site, and approximately 100 facilities, consisting of launch support, research facilities, and labs at

the WFF Island Complex and all associated equipment located at these sites. . . .

VI. *Installation*

Installation shall mean to set in position and connect or adjust for use, any material, component, structure, equipment, or utility.

The work performed by the parties was also designed to enhance the launch site and its facilities, a function Congress recognized as essential to the Nation's space-related activities. NASA could have chosen to perform this work using civil service employees, but instead chose to contract this work out to CSC and H & H. The movement of equipment was clearly within the scope of the H & H contract. The Plaintiff and Defendant were thus engaged in NASA's trade, business, or occupation, and were statutory fellow employees, thus the Plaintiff's claim is barred by the operation of the exclusivity provisions of the Virginia Workers' Compensation Act.

## Conclusion

At the time of the alleged accident, both the Plaintiff and Defendant were engaged in the trade, business, or occupation of NASA, the project owner, and are, therefore, statutory fellow employees. Accordingly, the Plaintiff's exclusive remedy is provided by the Virginia Workers' Compensation Act. This Court, therefore, sustains the Defendant's Plea in Bar.