## CIRCUIT COURT OF THE CITY OF NORFOLK

Antonio Stephen

v.

Charles R. Dickens
and Ceres Marine
Terminals, Inc.

Case No. (Law) L02-875

BY JUDGE MARC JACOBSON

November 13, 2003

Plaintiff Antonio Stephen has filed a Motion for Judgment seeking damages of $2,000,000.00 against Charles R. Dickens and Ceres Marine Terminals (Ceres) (collectively, Defendants). Stephen alleges that on July 9, 2000, he suffered "serious and permanent injuries" while operating a "hustler" vehicle at Norfolk International Terminals (NIT), which injuries were allegedly caused by Dickens' negligence. (Mot. for J. ¶¶ 4 – 6.) Stephen further alleges that Defendants "negligently owned, operated, and maintained the [hustler] vehicle in a negligent and reckless manner." (Mot. for J. ¶ 7.) Stephen was employed by APM Terminals (APM), which was formerly known as Universal Maritime Service. Both Ceres and APM perform stevedoring operations at NIT.

Signal Mutual Indemnity Association, Ltd. (Signal) and APM Terminals (APM), formerly known as Universal Maritime Service (collectively, Intervenors), have filed a Petition for Intervention and Lien Protection (Petition) in the above-captioned case alleging that they have "already paid Stephen the substantial amount of over $49,000.00 in benefits under the Longshore and Harbor Workers' Compensation Act [LHWCA] ... and were continuing to pay medical expenses for the same injuries." (Intervenors' Br. in Sup. of Pet. for Intervention and Lien Protection [hereinafter "Intervenors' Br."], at 2.) On October 16, 2002, Intervenors filed a Petition for Intervention. See R. Sup. Ct. Va. 3:19.

In Virginia, intervention in a pending lawsuit is at the discretion of the trial court. Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 9:13 (3d ed. Supp. 2001). Rule 3:19 of the Rules of the Supreme Court of Virginia provides: "A new party may by leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or defense germane to the subject matter of the proceeding." Rule 3:19 went into effect on July 1, 2000, and provided, for the first time in Virginia, a vehicle for new parties to intervene in actions on the law side of the court. Although, to date, there does not appear to be any published appellate case law in Virginia regarding Rule 3:19; a court may look to interpretation of Rule 2:15, the identical rule governing intervention in equity, for guidance.

The term "germane" has been defined as "relevant to or closely allied." *Cluverius v. McGraw, Inc.*, 44 Va. Cir. 426, 427 (Richmond 1998) (quoting *Black's Law Dictionary* 687 (6th ed. 1990)). Further, the Supreme Court of Virginia has held that in order to become a party under Rule 2:15, an intervenor must "assert some right involved in the suit." *Layton v. Seawall Enters., Inc.*, 231 Va. 402, 406, 344 S.E.2d 896, 899 (1986) (quoting *Lile's Equity Pleading and Practice* 91 (3d ed. 1952)).

Plaintiff's Motion for Judgment alleges that "[a]s a direct and proximate result of the [D]efendants' negligence and recklessness, the plaintiff was seriously and permanently injured." (Mot. for J. ¶ 8.) Thus, the central issues of this case are: (1) whether the Defendants were negligent; and, if so, (2) whether such negligence was the direct or proximate cause of some or all of Stephen's alleged damages. Intervenors do not assert rights that are "germane" to these issues; instead, they are requesting to intervene in this action on the mere prospect that judgment will be entered in favor of Plaintiff. *Cf. Parten Paint & Drywall Co. v. Wells/Ashburn Venture*, 29 Va. Cir. 117 (Loudoun 1992) (holding that a lien for attorney's fees was too "attenuated and indirect … for it to be germane to the subject matter of [a mechanic's lien] suit"). Further, Rule 3:19 requires that an intervenor enter a case as a "plaintiff or defendant." Yet, if Intervenors were permitted to intervene in the instant case, they would, in effect, enter as parties with no claim until after and if a final judgment is rendered.

Intervenors cite *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74 (1980), as authority for granting their petition; however, in that case the Supreme Court of the United States made no ruling directly regarding intervention. In fact "*Bloomer* does little other than touch upon intervention in passing." *Richardson v. Magnan*, Law No. CL03-714, Portsmouth Circuit Court (Letter Opinion June 19, 2003). Further, the *Bloomer* case originated in the United States District Court for the Southern District of New York; therefore, Rule 24

of the Federal Rules of Civil Procedure governed intervention in that case. *See Bloomer v. Tung*, 448 F. Supp. 652 (S.D. N.Y 1978); compare Fed. R. Civ. P. 24, with R. Sup. Ct. Va. 3:19.

"A party is not entitled to intervene in litigation … merely because one byproduct … may be that he is adversely affected" *Cluverius*, 44 Va. Cir. at 427 – 48 (quoting *Aquia Harbour Prop. Owners Assoc., Inc. v. Stafford County Bd. of Supervisors*, 12 Va. Cir. 114, 116 (Stafford 1987)). At this juncture, Intervenors do not have an interest sufficiently germane to the instant action to permit them to enter as a party.

Intervenors' Petition for Intervention and Lien Protection is denied, and the Order will be entered on November 13, 2003.

The Court does note that counsel for Defendants did indicate in open court during argument on the issue of intervention that he would notify counsel for Intervenors prior to any disbursements being made, if disbursements are, in fact, applicable. If such is not the case the Court asks that the Court be notified immediately.

December 19, 2003

The Plaintiff, Antonio Stephen filed a Motion for Judgment seeking damages of $2,000,000.00 against Charles R. Dickens and Ceres Marine Terminals, Inc. Dickens is employed by Ceres as a stevedore. Stephen alleges that on July 9, 2000, he suffered "serious and permanent injuries" in a hustler vehicle accident at Norfolk International Terminals caused by Dickens's negligence. (Mot. for J. ¶¶ 4–6.) Stephen further alleges that Defendants "negligently owned, operated, and maintained the [hustler] vehicle in a negligent and reckless manner." (Mot. for J. ¶ 7.) Stephen was employed by APM Terminals, which was formerly known as Universal Maritime Service (Universal). Both Ceres and APM perform stevedoring operations at NIT. Virginia International Terminals (VIT) operates NIT, the largest of four general cargo terminals owned by the Virginia Port Authority (the VPA). Defendants filed a Plea in Bar and Motion to Dismiss for lack of subject matter jurisdiction.

"A Plea in Bar is a defensive pleading that reduces the litigation to a single issue," *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (quoting *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757, 758 (1992)), "which, if proven, creates a bar to the plaintiff's right of recovery." *Id*. (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996)). The party asserting a Plea in Bar carries the burden of proof. *Id*. For the purposes of a Plea in Bar, the facts stated in the

plaintiff's motion for judgment are deemed to be true. *See Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994).

The relief provided by the Virginia Workers' Compensation Act (Act) is an employee's exclusive remedy against his employer for injuries resulting from accidents occurring in the workplace. Va. Code Ann. § 65.2-307(A) (2002). When an owner hires subcontractors to assist him in carrying out any part of his trade, business, or occupation, the owner is liable to pay any compensation due to a subcontractor's worker that the owner would have been liable to pay had the worker been employed directly by him; the employer is considered to be the worker's "statutory employer." *See* Va. Code Ann. § 65.2-302 (2002). Further, under Virginia Code § 65.2-302, all workers "engaged in the trade, business, or occupation of the owner of a project are deemed to be statutory fellow employees." *Nichols v. VVKR, Inc.*, 241 Va. 516, 519, 403 S.E.2d 698, 700 (1991); *see Evans v. Hook*, 239 Va. 127, 387 S.E.2d 777 (1990); *Smith v. Horn*, 232 Va. 302, 351 S.E.2d 14 (1986). In *Smith v. Horn*, the Supreme Court of Virginia stated:

> The purpose of this and related provisions of the Workers' Compensation Act is to bring within the operation of the Act all persons engaged in work that is part of the trade, business, or occupation of the party who undertakes as owner or who contracts as contractor to perform the work, and to make liable to every employee engaged in the work every such owner, contractor, or subcontractor above such employee.

*Smith*, 232 Va. at 305, 351 S.E.2d at 16 (citing *Anderson v. Thorington Constr. Co.*, 201 Va. 266, 271, 110 S.E.2d 396, 399 – 400 (1959)). Under the Act, a plaintiff may only sue other parties who are strangers to the trade, business, or occupation of the work being done at the time of the accident. *Whalen v. Dean Steel Erection Co.*, 229 Va. 164, 167, 327 S.E.2d 102, 104 (1985) (citing *Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946)).

To determine if a contractor is performing the "trade, business, or occupation" of an owner, the Supreme Court of Virginia has established two separate tests, one for private businesses, *see Shell Oil v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and another for governmental entities, see *Henderson v. Central Tel. Co.*, 233 Va. 377, 355 S.E.2d 596 (1987). The Virginia Port Authority, created by Virginia Code § 62.1-128 and governed by Virginia Code Title 62.1, Chapter 10, is a political subdivision of the Commonwealth; therefore, the governmental entity test applies in the instant case. According to that test, "if the project's owner is a governmental agency

or a public utility, any activity which the owner is authorized or required to do by law or otherwise is considered the trade, business, or occupation of the owner. *Nichols*, 241 Va. at 521, 403 S.E.2d at 701. Thus, under this test, a governmental entity's trade, business, or occupation is defined not simply by what they do; "[w]hat they are supposed to do is also determinant." *Burke v. H & H Consol., Inc.*, 55 Va. Cir. 84, 87 (Norfolk 2001) (citing *Henderson*, 233 Va. at 377, 355 S.E.2d at 599 – 600)).

In determining whether the governmental entity test is applicable, it is necessary for the Court to consider the guiding statutory provisions relating to the trade, occupation, or business that the VPA is empowered and/or authorized to perform or undertake and whether the work of the Plaintiff and Defendant was a part of VPA's trade, business, or occupation.

The VPA is required by Virginia Code § 62.1-132.3, on behalf of the Commonwealth:

> [T]o foster and stimulate the commerce of the ports of the Commonwealth, to promote the shipment of goods and cargoes through the ports, to seek to secure necessary improvements of navigable tidal waters within the Commonwealth, and in general to perform any act or function which may be useful in developing, improving, or increasing the commerce, both foreign and domestic, of the ports of the Commonwealth.

Further, the VPA is authorized to "acquire, construct, maintain, equip, and *operate marine terminals, port facilities, wharves, docks, ships, piers, quays, elevators, compressors, refrigeration storage plants, warehouses, and other structures* necessary for the convenient use of the same in the aid of commerce. Va. Code Ann. § 62.1-132.18 (2001) (emphasis added). Virginia Code § 62.1-147.2 mandates that the powers granted to the VPA in Title 62.1, Chapter 10 be "liberally construed." In 1982, VIT was created to operate NIT for the VPA. VIT utilizes private stevedoring companies to assist in carrying out the necessary functions for the terminal's operation; the stevedoring companies may then charge barge and shipping companies for their services.

Ceres and APM are both stevedoring companies operating at NIT; Dickens is employed as a stevedore by the former, Stephen by the latter. The basic definition of a stevedore is: "A person employed in the loading and unloading of vessels." *Black's Law Dictionary* 1145 (7th ed. 2000). As stevedoring companies operating at NIT, both Ceres and APM's work constitutes the "trade, business, or occupation" of the VPA. *See also Hudson v. Stevedoring Co.*, No. 02-3529, Letter Op., at 4 (Portsmouth Nov. 12, 2003)

("There is no doubt based upon the evidence before this Court that VIT stands in the position of a general contractor as contemplated by Code § 65.2-302(A). It is also clear that the various stevedoring companies … are subcontractors who engage in the execution or performance of the trade or business of VIT.")

The Court concludes that Plaintiff and Defendants are statutory fellow employees under the canopy of the Virginia Workers' Compensation Act. *See Hudson*, No. 02-3529, Letter Op. (Portsmouth Nov. 12, 2003); *Butts v. York Int'l Corp.*, 59 Va. Cir. 422 (Portsmouth 2002); *Burke v. H & H Consol., Inc.*, 55 Va. Cir. 84 (Norfolk 2001); *Caddy v. Sea-Land Serv., Inc.*, No. 740CL-671-00, Letter Op. (Portsmouth Cir. Ct. Sept. 13, 2001), *cert. denied*, Rec. No. 020399, Supreme Court of Virginia (Order May 28, 2002) (finding no reversible error)). Therefore, the Virginia Workers' Compensation Act provides Plaintiff's exclusive remedy.

Defendants' Plea in Bar is sustained.