COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chafin, O'Brien and Malveaux
Argued at Salem, Virginia


CHARLIE JEFFREYS

v.        Record No. 0660-17-3

THE UNINSURED EMPLOYER'S FUND,
  MOUNT LEBANON MISSIONARY
  BAPTIST CHURCH AND ANNIE L. MOSBY

THE UNINSURED EMPLOYER'S FUND

v.        Record No. 0693-17-3

CHARLIE JEFFREYS,
  MOUNT LEBANON MISSIONARY BAPTIST CHURCH,
  HARVEY SCHOOL HISTORICAL SOCIETY
  AND ANNIE L. MOSBY

MEMORANDUM OPINION* BY
JUDGE TERESA M. CHAFIN
OCTOBER 3, 2017

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

James B. Feinman (James B. Feinman & Associates, on briefs), for
Charlie Jeffreys.

Matthew J. Griffin (Midkiff, Muncie & Ross, P.C., on briefs), for
the Uninsured Employer's Fund.

No brief or argument for Mount Lebanon Missionary Baptist
Church, Harvey Historical Society and Annie L. Mosby.


On April 6, 2017, the Virginia Workers' Compensation Commission denied Charlie

Jeffreys's claim for workers' compensation benefits based on spinal injuries he sustained while

rebuilding a historic school.  On appeal, Jeffreys contends that the Commission erred by

determining that he was not a direct or statutory employee of the Harvey School Historical

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Society ("the Historical Society") or the Mount Lebanon Missionary Baptist Church ("the Church"). In a separate appeal, the Uninsured Employer's Fund ("the Fund") contends that the Commission erred by failing to fully reverse a prior decision awarding Jeffreys workers' compensation benefits. The Fund also argues that the Commission erred by failing to expressly dismiss Jeffreys's claim. For the reasons that follow, we affirm the Commission's decision and remand this case for the entry of a more complete order.

## I. BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*) (citations omitted). In the context of this consolidated appeal, we view the evidence relevant to the assignments of error raised by Jeffreys in the light most favorable to the Fund and Jeffreys's alleged employers, the Historical Society and the Church. Conversely, we view the evidence relevant to the assignments of error raised by the Fund in the light most favorable to Jeffreys. So viewed, the evidence is as follows.

On October 31, 2012, Jeffreys was injured as he and other individuals were rebuilding a historic building on private property. As the workers were reconstructing the building, a heavy wooden beam fell from its roof and struck Jeffreys on the back of his neck. Jeffreys incurred severe spinal injuries that rendered him quadriplegic.

At the time of his accident, Jeffreys was working to rebuild the Harvey School, a one-room schoolhouse in Pittsylvania County where African-American students were educated from 1880 until 1964. In 2003, members of the community located near the school formed the

Harvey School Historical Society[1] to "purchase, restore, preserve, and maintain" the school. The ultimate goal of the Historical Society was to restore the school to its original condition and register it as an official historical site. The Historical Society also planned to establish a visitor's center in the school containing exhibits about the local community.

The Historical Society was a non-profit organization with around fifteen members. Annie L. Mosby was the president of the Historical Society, and she organized most of its meetings and activities. While the Historical Society only met sporadically throughout its existence, its members focused on acquiring the school, raising money, and securing community support for the project. The Historical Society planned to hire contractors to move the school to a new location and renovate the building.

In order to obtain "tax-exempt" status, the Historical Society became a part of the Mount Lebanon Missionary Baptist Church in October of 2003. As an "auxiliary" of the Church, the Historical Society was allowed to use the Church's building for its meetings. The Church, however, did not provide any additional support to the Historical Society. Although the Church generally supported the goals of the Historical Society, the Church did not provide any financial assistance to the Historical Society and the Historical Society maintained a separate bank account. Notably, the Church was not involved in the actual reconstruction and renovation of the school.

Eventually, the Historical Society failed to raise enough money to purchase or restore the school.[2] Nevertheless, Mosby continued to pursue the restoration project. In 2003, Mosby's

---

[1] This organization was referred to as both the "Harvey School Historical Society" and the "Harvey School Restoration Society." The members of the society used both terms interchangeably.

[2] Many of the members of the Historical Society moved to different communities. While the Historical Society continued to exist, its members focused on writing a book about the

husband purchased the school building for her as a birthday gift. The sales contract involving the transaction referenced the "Harvey School Restoration" and listed Mosby as "president" of that project. In 2011, Mosby hired a contractor to dismantle the school building and rebuild it on property belonging to her family. Mosby paid the contractor with her own money. The contractor dismantled the building and moved it to the property, but he abandoned the project before he rebuilt the school.

In 2012, Mosby hired William Jerome Johnson to rebuild the school. As Johnson had helped the original contractor dismantle and move the school, he was familiar with the school building and the particular demands of the project. Although Mosby told Johnson to comply with the requirements of her building permit, she did not tell him how to reconstruct the building or provide any instructions regarding specific aspects of the project. Mosby did not have any experience in the field of construction. Moreover, she lived in California at all times pertinent to this appeal. Thus, most of the aspects of the rebuilding project were left to Johnson's discretion.

At some point, Johnson asked Mosby if he could hire someone to help him rebuild the school.[3] Mosby told Johnson that he could hire an assistant if he wished to do so and that she would leave the decision to him. Johnson then hired Jeffreys to help him rebuild the school. Johnson was the "boss" of the reconstruction project, and he gave Jeffreys instructions regarding the tasks that he was supposed to complete. Jeffreys did not work on the school building unless Johnson was present. Although Mosby paid Jeffreys, Johnson kept track of Jeffreys's work hours and reported the amount of hours that Jeffreys worked to Mosby. While Mosby knew that Johnson had a "helper," she never met Jeffreys during the construction project and she did not know his name before the accident.

Harvey School and the local community rather than attempting to acquire or renovate the school building.

[3] Johnson was not a licensed contractor at this time.

Johnson, Jeffreys, and another individual worked to rebuild the school for approximately two months before Jeffreys was injured. The three men used their own tools to rebuild the school. Johnson chose the materials required for the project, and Mosby paid for them with a credit card. While Mosby paid each of the workers on an hourly basis, she did not withhold any of their wages for tax purposes. Mosby paid the workers with her personal funds rather than funds from the Historical Society.

As previously stated, Jeffreys suffered severe spinal injuries when a beam fell from the roof of the school building and struck him in the neck. Jeffreys filed a claim for workers' compensation benefits following his accident alleging that he had been injured by an accident arising from and during the course of his employment with Mosby, the Historical Society, and the Church.[4] Notably, Jeffreys failed to name Johnson as a party defendant. As none of the alleged employers had workers' compensation insurance, the Fund was added as a party. Jeffreys argued that Mosby, the Historical Society, and the Church were his direct employers. Alternatively, Jeffreys argued that Mosby, the Historical Society, and the Church were his statutory employers pursuant to Code § 65.2-302 because he was injured while performing work that was a part of their "trade, business, or occupation."

After reviewing the evidence, the deputy commissioner presiding over Jeffreys's case concluded that he was an employee of Mosby, the Historical Society, and the Church. The deputy commissioner concluded that Mosby was Jeffreys's direct employer because she gave permission for Johnson to hire him and paid his wages. The deputy commissioner then concluded that Mosby was acting on behalf of the Historical Society when she hired Jeffreys to rebuild the school. Therefore, the deputy commissioner determined that the Historical Society

---

[4] Stella Fitzgerald, Mosby's sister who lived near the construction site and delivered paychecks to the workers, was initially listed as one of Jeffreys's employers. She was subsequently dismissed as a party without objection.

was also Jeffreys's employer. As the Historical Society was an auxiliary of the Church, the deputy commissioner determined that the Church was ultimately Jeffreys's employer and entered an award for benefits against it. As the deputy commissioner concluded that Mosby and the other named parties were Jeffreys's direct employers, she did not reach his statutory employment argument.

The Fund requested a review of the deputy commissioner's decision. Upon review, the Commission determined that Mosby was not Jeffreys's direct employer because she "did not maintain the requisite control over [Jeffreys]" or "direct the means and methods by which [he] performed his work." The Commission also concluded that Mosby was not in the "trade, business, or occupation of construction." The Commission, however, concluded that the Fund had failed to argue that the Church was not Jeffreys's direct employer, and thereby waived its ability to challenge the award entered against it. The Fund appealed the decision to this Court.

This Court concluded that "abundant evidence" supported the determination that Mosby was not Jeffreys's employer, and affirmed the Commission's decision regarding that issue. See Uninsured Employer's Fund v. Jeffreys, No. 1676-15-3, 2016 Va. App. LEXIS 136, at *7 (Va. Ct. App. Apr. 26, 2016). This Court then determined that the Fund had preserved its argument pertaining to the Historical Society and the Church. Id. at *14. This Court remanded the case to the Commission for the determination of whether Jeffreys was directly employed by either the Historical Society or the Church, or whether they were his statutory employers. See id. at *15. Specifically, this Court directed the Commission to determine whether the Historical Society or the Church were engaged in the "trade, business, or occupation of construction." See id. at *15 n.3 (referring to specific issues raised in the Fund's request for review).

On remand, the Commission determined that the Historical Society and the Church were not Jeffreys's employers. The Commission explained that the evidence failed to establish that

the Historical Society or the Church exercised any control over Jeffreys's work. While the Commission concluded that Johnson may have controlled Jeffreys's work activities, it expressly determined that Johnson was an independent contractor rather than a direct employee of Mosby, the Historical Society, or the Church. The Commission then acknowledged that there was "no evidence the Church and Historical Society were in the construction business," and therefore concluded that they were not statutory employers of Jeffreys pursuant to Code § 65.2-302.

In conclusion, the Commission stated that the prior decision of the deputy commissioner "holding [that] the Historical Society was [Jeffreys's] employer is REVERSED." The Commission's decision, however, failed to reverse the deputy commissioner's decision to the extent it applied to the Church. It also failed to expressly dismiss Jeffreys's claim for benefits. The Fund requested the Commission to modify its opinion to reverse the deputy commissioner's decision pertaining to all of the named parties, and dismiss Jeffreys's claim. The Commission denied the Fund's request.

Both Jeffreys and the Fund appealed the Commission's decision to this Court.

## II. ANALYSIS

On appeal, Jeffreys challenges the Commission's decision regarding his employment status. Although Jeffreys presents six assignments of error, his assignments may be condensed into two primary arguments. First, Jeffreys contends that he was a direct employee of the Historical Society and the Church because they had the ability to control his activities. Alternatively, Jeffreys argues that the Historical Society and the Church were his statutory employers pursuant to Code § 65.2-302 because he was injured while performing work that was a part of their "trade, business, or occupation."

The Fund presents two assignments of error in a separate appeal. First, the Fund argues that the Commission erred by failing to reverse the deputy commissioner's decision that Mosby

and the Church were Jeffreys's employers. Second, the Fund contends that the Commission erred by failing to expressly dismiss Jeffreys's claim for benefits.

For the reasons that follow, we conclude that the Historical Society and the Church were not Jeffreys's direct or statutory employers. We also conclude that the Commission should have reversed the deputy commissioner's decision that the Church was Jeffreys's employer and dismissed his claim for benefits.

A. THE HISTORICAL SOCIETY AND THE CHURCH WERE NOT JEFFREYS'S DIRECT EMPLOYERS

"In an abundance of caution," Jeffreys challenges the Commission's decision that he was not a direct employee of the Historical Society or the Church. Jeffreys contends that Mosby had the ability to control him and the other workers rebuilding the school and instruct them regarding their day-to-day activities. Therefore, Jeffreys argues that he was an employee of Mosby in her capacity as the president of the Historical Society, and in turn, an employee of both the Historical Society and the Church.

"The determination as to whether an individual is an employee, or an independent contractor, . . . 'involves a mixed question of law and fact which is reviewable on appeal.'" Creative Designs Tattooing Assocs. v. Estate of Parrish, 56 Va. App. 299, 308, 693 S.E.2d 303, 308 (2010) (quoting Cty. of Spotsylvania v. Walker, 25 Va. App. 224, 230, 487 S.E.2d 274, 276 (1997)). "[W]hat constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact." Id. at 307, 693 S.E.2d at 307-08 (quoting Intermodal Servs., Inc. v. Smith, 234 Va. 596, 600, 364 S.E.2d 221, 224 (1988)). While issues of law are subject to *de novo* review on appeal, the factual findings made by the Commission are binding on this Court if they are supported by credible evidence. See Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (*en banc*).

- 8 -

Upon review, we conclude that Jeffreys's argument is largely foreclosed by this Court's prior decision in Jeffreys, 2016 Va. App. LEXIS 136. In that appeal, this Court concluded that the evidence presented in this case established that Mosby was not Jeffreys's direct employer. See id. at *7. That decision is the law of the case and may not be re-examined in this appeal. See, e.g., Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26, 661 S.E.2d 822, 826 ("[W]hen there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal."), cert. denied, 129 S. Ct. 726 (2008).

Jeffreys did not have an employment relationship with either the Historical Society or the Church that existed independently from his relationship with Mosby.[5] Thus, if Mosby was not Jeffreys's direct employer, then the Historical Society and the Church were also not his direct employers. As this Court explained in the prior appeal, "if the agent Mosby was found not to be [Jeffreys's] employer, it necessarily follows that Mosby's principal[s], the Historical Society [and the] Church, could not be [Jeffreys's] employer." Jeffreys, 2016 Va. App. LEXIS 136, at *14. Jeffreys simply was not linked to the Historical Society or the Church beyond the relationship he had with Mosby.

Moreover, the Historical Society and the Church did not exercise any control over Jeffreys's work activities.

> The right of control is the determining factor in ascertaining the parties' status in an analysis of an employment relationship. And the right of control includes not only the power to specify the result to be attained, *but the power to control the means and methods by which the result is to be accomplished.* An employer-employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work. [I]f the latter is free to adopt such means and methods as

---

[5] We note that the Commission did not expressly determine whether Mosby was acting as an agent of the Historical Society when she hired Johnson to rebuild the school. Accordingly, we do not address that issue.

he chooses to accomplish the result, he is not an employee but an independent contractor.

Intermodal, 234 Va. at 601, 364 S.E.2d at 224 (emphasis added) (internal citations and quotations omitted).

In the present case, the Church and the Historical Society had no contact with Jeffreys. Accordingly, they did not control the means and methods by which he accomplished his work.[6] The Church was not involved in the reconstruction of the Harvey School. While Mosby was the president of the Historical Society, as previously stated, this Court has determined that she did not exercise the degree of control required to establish an employer-employee relationship with Jeffreys. As established by the evidence presented in this case, Johnson was the "boss" of the project and he instructed Jeffreys regarding his daily activities. Therefore, Johnson had the ability to control Jeffreys's construction activities rather than Mosby, the Historical Society, or the Church.

In summary, we conclude that the evidence of the present case established that the Historical Society and the Church were not the direct employers of Jeffreys. Their only relationship with Jeffreys was through Mosby, and they did not exercise any independent control of the construction project. Accordingly, we affirm the Commission's decision regarding this issue.

## B. THE HISTORICAL SOCIETY AND THE CHURCH WERE NOT JEFFERYS'S STATUTORY EMPLOYERS

As his primary argument, Jeffreys contends that the Historical Society and the Church were his statutory employers pursuant to Code § 65.2-302.[7] Jeffreys contends that the "trade,

_____

[6] We also note that neither the Church nor the Historical Society paid Jeffreys. Rather, Mosby paid Jeffreys's wages from her personal funds.

[7] On appeal, the Fund contends that Jeffreys waived this argument by failing to challenge the deputy commissioner's decision to award benefits based on a direct employment theory

business, or occupation" of the Historical Society was to restore the Harvey School and that the Church was also engaged in this "trade, business, or occupation" because the Historical Society was a part of it. As Jeffreys was injured while he was helping restore the school, he claims that he was injured while working in the "trade, business, or occupation" of the Historical Society and the Church, and therefore, that they were his statutory employers. We disagree with Jeffreys's argument.

Code § 65.2-302 provides the framework for statutory employment in Virginia. Code § 65.2-302(A), the subsection of the statute pertinent to this appeal, provides that:

> When any person (referred to in this section as "owner") undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

(Emphasis added). Code § 65.2-302 "is meant to prevent an owner from escaping liability under the [Virginia Workers' Compensation] Act by the simple expedient of subcontracting away work which is part of its trade, business, or occupation." Henderson v. Cent. Tel. Co. of Va., 233 Va. 377, 381, 355 S.E.2d 596, 598-99 (1987).

"Determining whether work is part of the trade, business, or occupation of an owner is a mixed question of law and fact." Rodriguez v. Leesburg Bus. Park, LLC, 287 Va. 187, 193, 754 S.E.2d 275, 278 (2014). As previously stated, we review issues of law *de novo*, while we defer

without addressing his statutory employment argument. When the Fund appealed the deputy commissioner's decision, Jeffreys represented that the deputy commissioner's decision was correct and argued that it should be affirmed. We conclude that this representation did not amount to a waiver or abandonment of Jeffreys's statutory employment argument. Jeffreys made this alternative argument in a brief he filed with the deputy commissioner, and he presented evidence regarding it. Furthermore, the issue was specifically argued before the Commission on remand from this Court, and the Commission directly addressed the issue.

to the factual findings of the Commission when they are supported by credible evidence.  See Rusty's Welding, 29 Va. App. at 127, 510 S.E.2d at 259.

As a preliminary matter, we conclude that the Church was clearly not engaged in the "trade, business, or occupation" that led to Jeffreys's injury outside of its relationship with the Historical Society.  The primary "trade, business, or occupation" of the Church was to administer to the spiritual needs of its members, and it was not engaged in the construction industry.  See generally Kramer v. Kramer, 199 Va. 409, 416, 100 S.E.2d 37, 42-43 (1957) (explaining that a church was not involved in the business of construction).  The pastor of the Church explained that it hired independent contractors to carry out any of its construction or renovation projects rather than attempting to complete those projects itself.

Jeffreys, however, argues that the Church was his statutory employer due to its relationship with the Historical Society.  As the Historical Society was a part of the Church, Jeffreys contends that the two organizations shared the same "trade, business, or occupation." Accordingly, the determination of the "trade, business, or occupation" of the Historical Society is the central issue presented by Jeffreys's argument.

Citing a website created and operated by the Historical Society and other documents circulated among its members, Jeffreys contends that the Historical Society was formed to "purchase, restore, preserve, and maintain" the Harvey School.  Thus, Jeffreys contends that these activities constituted the "trade, business, or occupation" of the Historical Society.  As he was injured while he was "restoring" the school, Jeffreys claims that he was injured while performing work that was a part of the Historical Society's "trade, business, or occupation." Jeffreys's analysis incorrectly defines the "trade, business, or occupation" of the Historical Society due to his reliance on an overbroad definition on the term "restore."

Determining the "trade, business, or occupation" of an entity "'is not a simple, straightforward exercise.'" Rodriguez, 287 Va. at 193, 754 S.E.2d at 278 (quoting Henderson, 233 Va. at 382, 355 S.E.2d at 599). "[I]t 'depends upon the facts and circumstances of the particular case [and] does not readily yield to categorical or absolute standards.'" Id. (quoting Johnson v. Jefferson Nat'l Bank, 244 Va. 482, 485, 422 S.E.2d 778, 780 (1992)).

"The analysis of a project owner's trade, business, and occupation begins with identification of the nature of the particular owner." Nichols v. VVKR, Inc., 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991). When the owner is a private entity, Virginia's appellate courts have routinely focused on the activities that are normally carried out by employees of the entity to determine the "trade, business, or occupation" of that entity. See id. An analysis of the activities carried out by an entity's employees "on a day-to-day basis provides a reasonably reliable indicator of their trade, business, or occupation." Henderson, 233 Va. at 383, 355 S.E.2d at 599.

This "normal work test" was first established in Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (1972). As explained in Shell Oil,

> [t]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test . . . is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

Id. at 722, 187 S.E.2d at 167.

Jeffreys contends that the "normal work test" is inapplicable because the Historical Society is a nonprofit entity rather than a traditional business. Like a traditional business, however, the Historical Society is a private entity, and as such, it has "broad discretion to choose its business activities." See Rodriguez, 287 Va. at 195, 754 S.E.2d at 279; Nichols, 241 Va. at 521, 403 S.E.2d at 701. While the "normal work test" does not apply to government entities and

public utilities, these entities are distinguished from private entities because they do not have the ability to choose their own activities and thereby define their "trade, business, or occupation." See Henderson, 233 Va. at 383, 355 S.E.2d at 600 ("Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means.").

As the Historical Society is a private entity with the ability to choose its own activities, we find the "normal work test" instructive in this case. Nonetheless, we acknowledge that the "normal work test" is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case." Rodriguez, 287 Va. at 196, 754 S.E.2d at 279 (quoting Cinnamon v. IBM Corp., 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989)).

When we review the characteristics of the Historical Society and the activities normally carried out by its members, we conclude that the complete reconstruction of the Harvey School was not a part of the Historical Society's "trade, business, or occupation." While the ultimate goal of the Historical Society was to "restore" the school, the rebuilding project at issue was simply beyond its capabilities.

The Historical Society was not a construction company or a commercial property developer. Cf. Pfeifer v. Krauss Constr. Co. of Va., 262 Va. 262, 269, 546 S.E.2d 717, 720 (2001) (holding a commercial property developer was the statutory employer of a subcontractor installing gas lines on its property). It was a small, grassroots, nonprofit organization with limited resources. It had approximately fifteen members at the height of its success. None of the evidence presented in this case established, or even implied, that the members of the Historical Society could undertake the construction project at issue.

- 14 -

Similarly, the evidence failed to establish that the members of the Historical Society engaged in construction-related activities on a regular basis. Rather, the members of the Historical Society engaged in fund-raising activities and activities designed to encourage community support for their project. Correspondence between Mosby and members of the Historical Society established that the Historical Society intended to hire contractors to dismantle, move, and rebuild the school, and the evidence presented in this case did not imply that members of the Historical Society intended to participate in this project.

We acknowledge that the restoration of the Harvey School necessarily involved certain construction-related activities. The complete reconstruction of the school building, however, fell outside of any routine restoration work. While the Historical Society was formed to "restore" the school, it's "trade, business, or occupation" did not include the complete reconstruction of the building. See Rodriguez, 287 Va. at 191, 754 S.E.2d at 277 (holding that a commercial property development company was not the statutory employer of a contractor hired to build warehouses on its property even though the company was "formed for the purposes of . . . improving . . . the property").

For these reasons, we conclude that the reconstruction of the Harvey School was not the Historical Society's "trade, business, or occupation." The complete reconstruction of the school was beyond the restoration project envisioned by the Historical Society, and its members were not involved in the reconstruction project or other construction activities. Accordingly, we conclude that the Commission correctly determined that the Historical Society and the Church were not engaged in the construction business, and we affirm its decision that neither of those parties was Jeffreys's statutory employer.

C.  THE COMMISSION'S OPINION DID NOT PROVIDE COMPLETE RELIEF

In a separate appeal, the Fund argues that the Commission's opinion failed to provide complete relief.  The Fund contends that the Commission erred by failing to reverse the deputy commissioner's decision to the extent it applied to each of the named employers and dismiss Jeffreys's claim for benefits.  We agree with the Fund's argument.

Code § 65.2-704 addresses awards and opinions from the Commission.  Code § 65.2-704(A) states that, "The Commission or any of its members or deputies shall hear the parties at issue, their representatives, and witnesses; shall decide the issues in a summary manner; *and shall make an award or opinion carrying out the decision.*"  (Emphasis added).

The Commission's award and opinion in the present case did not fully carry out its decision or provide the named parties with complete relief.  Although the Commission concluded that the Historical Society and the Church were not Jeffreys's employers, its opinion only reversed the deputy commissioner's decision to the extent it pertained to the Historical Society.  Notably, the deputy commissioner's decision entered an award against the Church rather than the Historical Society.  The Commission's decision also did not expressly dismiss Jeffreys's claim for benefits.

Accordingly, we remand this case to the Commission for the entry of a revised order consistent with this opinion.  While we affirm the substance of the Commission's decision, we conclude that the Commission's order should have expressly reversed the deputy commissioner's decision that the Church was Jeffreys's employer and dismissed his claim.  Therefore, we direct the Commission to enter an order reversing the deputy commissioner's decision to the extent it applied to the Historical Society *and* the Church, and dismiss his claim for benefits.[8]

---

[8] We note that the Fund argues that the Commission's opinion should have also reversed the deputy commissioner's decision to the extent it applied to Mosby.  The Commission reversed this aspect of the deputy commissioner's decision in its September 24, 2015 opinion, and this

### III.  CONCLUSION

In summary, we conclude that the Historical Society and the Church were not Jeffreys's direct or statutory employers.  The Historical Society and the Church had no direct relationship with Jeffreys, and they did not control the means and methods by which he performed his work.  Additionally, the Historical Society and the Church were not engaged in the business of construction, and their actual "trade, business, or occupation" did not encompass the complete reconstruction of the Harvey School.  Although we affirm the substance of the Commission's decision, we remand this case for the entry of a revised order consistent with this opinion to fully carry out the Commission's decision.  Accordingly, we affirm the Commission's decision, and remand this case for the entry of a revised order.

<u>Affirmed and remanded.</u>

---

Court affirmed that decision.  Thus, the Commission's opinion did not need to expressly reverse the deputy commissioner's decision regarding Mosby.  While the Commission may wish to note that it previously reversed the deputy commissioner's decision that Mosby was not Jeffreys's employer in its revised opinion, we leave that issue to the Commission's discretion.